**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and THE STATE OF INDIANA, <u>ex rel.</u> JOHN D. MCCULLOUGH and JAMES R. HOLDEN, | ) ) ) ) | Cause No. 1:21-CV-00325 TWP-TAB |
| Plaintiff-Relators, | ) ) ) | |
| v. | ) ) ) | |
| ANTHEM INSURANCE COMPANIES, INC., MDWISE, INC., CARESOURCE, INC., COORDINATED CARE CORPORATION, INDIANA UNIVERSITY HEALTH, INC., ASCENSION HEALTH, INC., COMMUNITY HEALTH NETWORK, INC., HEALTH AND HOSPITAL CORPORATION OF MARION COUNTY, LUTHERAN HEALTH NETWORK, INC., and PARKVIEW HEALTH SYSTEM, INC., | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**<u>DEFENDANTS INDIANA UNIVERSITY HEALTH, INC., ASCENSION HEALTH, HEALTH AND HOSPITAL CORPORATION OF MARION COUNTY, LUTHERAN HEALTH NETWORK OF INDIANA, LLC, COMMUNITY HEALTH NETWORK, INC., AND PARKVIEW HEALTH SYSTEM, INC.'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF-RELATORS' SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 9(b) FOR FAILURE TO STATE A CLAIM</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...............................................................3

STANDARD OF REVIEW ........................................................................................................6

ARGUMENT ..............................................................................................................................6

    I.    Relators' Claims Are Barred By The Public Disclosure Doctrine. ...........................7

    II.   Relators Fail To State A False Claims Act Violation, Requiring Dismissal Under Federal Rule Of Civil Procedure 12(b)(6). ...................................................10

       A.   Relators Do Not Adequately Allege That Any Claim Was False. ...................11

       B.   Relators Do Not Adequately Allege Scienter. .................................................14

       C.   Relators Do Not Adequately Allege That Any False Claim Submission Was Material. .................................................................................................17

       D.   Relators Do Not Adequately Allege Causation..............................................20

       E.   Relators Do Not Plead "Reverse False Claims." ...........................................21

    III.  Relators Fail To Plead With Particularity As Required By Federal Rule Of Civil Procedure 9(b)..........................................................................................23

       A.   Relators Do Not Identify Any Specific False Claims......................................24

       B.   Relators Do Not Allege *Who* Was Involved Either........................................26

       C.   Relators Engage In Improper Group Pleading Against The Hospital Defendants Without Adequately Identifying Which Of Them Has Done What As Required By Rules 9(b) And 8..................................................27

    IV.  The Constitutionality of the FCA's *Qui Tam* Provision Remains In Question. ...........................................................................................................29

    V.   The SAC Should Be Dismissed With Prejudice. ...........................................29

CONCLUSION.........................................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.I. Credit Corp. v. Hartford Computer Grp., Inc.,*
  847 F. Supp. 588 (N.D. Ill. 1994) ........................................................................30

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).................................................................................................6, 11

*Atkins v. Hasan,*
  No. 15 CV 203, 2015 WL 3862724 (N.D. Ill. June 22, 2015) ........................27

*Bank of Am., N.A. v. Knight,*
  725 F.3d 815 (7th Cir. 2013)..............................................................................27, 28

*Bartholet v. Reishauer A.G.,*
  953 F.2d 1073 (7th Cir.1992)...................................................................................30

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 554 (2007).........................................................................................6, 10, 11

*Bellevue v. Univ. Health Servs. of Hartgrove, Inc.,*
  867 F.3d 712 (7th Cir. 2017)............................................................................. 7, 8, 9

*Blood v. VH-1 Music First,*
  668 F.3d 543 (7th Cir. 2012).......................................................................... 20, 21

*Bogie v. Rosenberg,*
  705 F.3d 603 (7th Cir. 2013)....................................................................................11

*Cause of Action v. Chicago Transit Auth.,*
  815 F.3d 267 (7th Cir. 2016).......................................................................... 7, 8, 10

*EEOC v. Concentra Health Services, Inc.,*
  496 F.3d 773 (7th Cir. 2007)...................................................................................28

*Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.,*
  412 F.3d 745 (7th Cir. 2005).......................................................................................6

*Forrest v. Universal Savings Bank, F.A.,*
  507 F.3d 540 (7th Cir. 2007)....................................................................................11

*Glaser v. Wound Care Consultants, Inc.,*
  570 F.3d 907 (7th Cir. 2009)......................................................................................8

*Heritage Ops. Grp., LLC,* 622 F. Supp. 3d at 686................................................28

*In re Crop Inputs Antitrust Litigation,*
  No. 4:21-md-02993 SEP, 2024 WL 4188654 (E.D. Miss. Sept. 13, 2024) .......................28

*Kane ex rel. U.S. v. Healthfirst, Inc.,*
  120 F. Supp. 3d 370 (S.D.N.Y. 2015)......................................................................23

*Kisor v. Wilkie,*
  588 U.S. 558 (2019) ..................................................................................................18

*Kuhn v. LaPorte County Comprehensive Mental Health Council,*
  No. 3:06-CV-317 CAN, 2008 WL 4099883 (N.D. Ind. Sept. 4, 2008)......................23

*Lanahan v. Cnty. of Cook,*
  41 F.4th 854 (7th Cir. 2022) ..............................................................................*passim*

*Richards v. Mitcheff,*
  696 F.3d 635 (7th Cir. 2012).......................................................................................6

*Sears v. Likens,*
  912 F.2d 889 (7th Cir. 1990).......................................................................................27

*Singer v. Progressive Care, SC,*
  202 F. Supp. 3d 815 (N.D. Ill. 2016) ................................................................ 25, 26

*Slaney v. The Int'l Amateur Athletic Fed'n,*
  244 F.3d 580 (7th Cir. 2001).......................................................................................30

*State ex rel. Holden v. Ice Miller, LLC,*
  211 N.E.3d 14 (Ind. Ct. App. 2023).............................................................................7

*Taha v. Int'l Bhd. of Teamsters, Local 781,*
  947 F.3d 464 (7th Cir. 2020).......................................................................................11

*Thulin v. Shopko Stores Operating Co., LLC,*
  771 F.3d 994 (7th Cir. 2014).......................................................................................23

*U.S. ex rel Feingold v AdminaStar Fed. Inc.,*
  324 F.3d 492 (7th Cir. 2003).......................................................................................10

*U.S. ex rel. Absher v. Momence Meadows Nursing Cntr., Inc.,*
  764 F.3d 699 (7th Cir. 2014)........................................................................................8

*U.S. ex rel. Baltazar v. Warden,*
  635 F.3d 866 (7th Cir. 2011).......................................................................................11

*U.S. ex rel. Berkowitz v. Automation Aids, Inc.,*
  896 F.3d 834 (7th Cir. 2018)....................................................................6, 17, 25, 26

*U.S. ex rel. Besancon v. Uchicago Argonne, LLC,*
    No. 12 C 7309, 2014 WL 4783056 (N.D. Ill. Sept. 24, 2014)..........................................22

*U.S. ex rel. Clausen v. Laboratory Corp. of Am., Inc.,*
    290 F.3d 1301 (11th Cir. 2002) ........................................................................................24

*U.S. ex rel. Dolan v. Long Grove Manor, Inc.,*
    No. 10 C 368, 2014 WL 3583980 (N.D. Ill. July 18, 2014)..........................................14

*U.S. ex rel. Enloe v. Heritage Ops. Grp., LLC,*
    622 F. Supp. 3d 679 (N.D. Ill. 2022) .........................................................................*passim*

*U.S. ex rel. Foreman v. AECOM,*
    19 F.4th 85 (2d Cir. 2021) ...............................................................................................21

*U.S. ex rel. Garst v. Lockheed-Martin Corp.,*
    328 F.3d 374 (7th Cir. 2003).............................................................................................25

*U.S. ex rel. Grenadyor v. Ukrainian Village Pharmacy, Inc.,*
    772 F.3d 1102 (7th Cir. 2014) ..........................................................................................17

*U.S. ex rel. Heath v. Wisconsin Bell, Inc.,*
    92 F.4th 654 (7th Cir.), *cert. granted sub nom. Wisconsin Bell, Inc. v. United States*, 144
    S. Ct. 2657 (2024)............................................................................................................15

*U.S. ex rel. Howze v. Sleep Centers Fort Wayne, LLC,*
    No. 1:11-CV-035 JD, 2016 WL 1358457 (N.D. Ind. Apr. 6, 2016) ..............................23

*U.S. ex rel. Kalec, et al. v. NuWave Monitoring, LLC,*
    No. 12 C 69, 2016 WL 750155 (N.D. Ill. 2016) ............................................................26

*U.S. ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison Indiana, Inc.,*
    305 F. Supp. 3d. 964 (S.D. Ind. 2018)............................................................................18

*U.S. ex rel. Lamers v. City of Green Bay,*
    168 F.3d 1013 (7th Cir. 1999) ................................................................................. 14, 17

*U.S. ex rel. Lusby v. Rolls-Royce Corp.,*
    No. 1:03-CV-0680-SEB/WTL, 2007 WL 4557773 (S.D. Ind. Dec. 20, 2007) ..................23, 24, 26

*U.S. ex rel. Mamalakis v. Anesthetix Mgmt. LLC,*
    20 F.4th 295 (7th Cir. 2021) .........................................................................................6, 25

*U.S. ex rel. McGee v. IBM Corp.,*
    81 F. Supp. 3d 643 (N.D. Ill. 2015) ..................................................................................9

*U.S. ex rel. Myers v. Am.'s Disable Homebound, Inc.,* No. 14 C 8525, 2018 WL 1427171,
    at *3 (N.D. Ill. Mar. 22, 2018) ........................................................................................22

*U.S. ex rel. Petratos v. Genentech Inc.,*
   855 F.3d 481 (3d Cir. 2017) ............................................................................................ 11, 20

*U.S. ex rel. Polansky v. Exec. Health Resources, Inc.,*
   599 U.S. 419 (Kavanaugh, J., concurring, joined by Barrett, J.) .......................................29

*U.S. ex rel. Presser v. Acacia Mental Health Clinic, LLC,*
   836 F.3d 770 (7th Cir. 2016)..........................................................................................6, 23

*U.S. ex rel. Robinson v. HealthNet, Inc.,*
   No. 1:19-cv-04258-JRS-DML, 2022 WL 623373 (S.D. Ind. Mar. 3, 2022) ....................10

*U.S. ex rel. Schutte v. SuperValu, Inc.,*
   598 U.S. 739 (2023)................................................................................................... 14, 15

*U.S. ex rel. Sibley v. Univ. of Chi. Med. Ctr.,*
   44 F.4th 646 (7th Cir. 2022) ...........................................................................................25

*U.S. ex rel. Stone v. OmniCare, Inc.,*
   No. 09 C 4319, 2011 WL 2669659 (N.D. Ill. July 7, 2011).............................................23

*U.S. ex rel. Suarez v. AbbVie Inc.,*
   2019 WL 4749967 (N.D. Ill. 2019) ....................................................................14, 17, 25, 26

*U.S. ex rel. Swiney v. Cmty. Integration Support Servs., LLC,*
   No. 1:20-cv-00717-JMS-TAB, 2022 WL 2916566 (S.D. Ind. July 25, 2022) ..................10

*U.S. ex rel. Yannacopoulos v. Gen. Dynamics,*
   652 F.3d 818 (7th Cir. 2011)...........................................................................................21

*U.S. ex rel. Zafirov v. Florida Medical Associates, LLC,*
   No. 8:19-CV-01236-KKM-SFP, 2024 WL 4349242 (M.D. Fla. Sept. 30, 2024)...........29

*U.S. ex rel. Zverev v. USA Vein Clinics of Chicago, LLC,*
   244 F. Supp. 3d 737 (N.D. Ill. 2017) ......................................................................... 11, 27

*U.S. v. Molina Healthcare of Illinois, Inc.,*
   17 F.4th 732 (7th Cir. 2021) ....................................................................................*passim*

*U.S., ex rel. Hoffman v. Nat'l Coll.,*
   No. 3:12-CV-237-TLS, 2013 WL 3421931 (N.D. Ind. July 8, 2013)........................ 23, 24

*United States v. Addus HomeCare Corp.,*
   No. 13 CV 9059, 2017 WL 467673 (N.D. Ill. Feb. 3, 2017)............................................25

*United States v. Bank of Farmington,*
   166 F.3d 853 (7th Cir. 1999)..................................................................................... 7, 8, 9

*United States v. Joel Kennedy Constructing Corp.*,
   584 F. Supp. 3d 595 (N.D. Ill. 2022) ................................................................................20

*United States v. Luce*,
   873 F.3d 999 (7th Cir. 2017) ................................................................................. 18, 20, 21

*United States v. Quest Diagnostics, Inc.*,
   No. 2:15-CV-413-PPS-JEM, 2017 WL 770176 (N.D. Ind. Feb. 27, 2017) .....................27

*United States v. Wagoner*,
   No. 2:17-CV-478-TLS, 2018 WL 4539819 (N.D. Ind. Sept. 20, 2018) ...........................10

*Universal Health Services, Inc. v. U.S. ex rel. Escobar*,
   579 U.S. 176 ................................................................................................................. 18, 19

*Vermont Agency of Natural Resources v. U.S. ex rel. Stephens*,
   529 U.S. 765 (2000) .........................................................................................................4

*Virnich v. Vorwald*,
   664 F.3d 206 (7th Cir. 2011) .........................................................................................3, 6

*Winforge, Inc. v. Coachmen Industries, Inc.*,
   No. 1:06-cv-619-SEB-JMS, 2007 WL 854025 (S.D. Ind. Mar. 13, 2007) .......................27

*Yates v. Pinellas Hematology & Oncology, P.A.*,
   21 F.4th 1288 (11th Cir. Dec. 29, 2021) .........................................................................29

**Statutes**

31 U.S.C. § 3729(a)(1)(G) ................................................................................................ 21, 22

31 U.S.C. § 3729(b)(1)(A)(i) ...................................................................................................15

31 U.S.C. § 3729(b)(4) ............................................................................................................18

31 U.S.C. § 3730(e)(4) (2012) ...................................................................................................7

31 U.S.C. § 3730(e)(4)(B) (2012) .............................................................................................9

Ind. Code § 5-11-5.7-1-2 et. seq. ............................................................................................10

Ind. Code § 5-11-5.7-7(e) .........................................................................................................7

**Other Authorities**

405 Ind. Admin. Code 1-10.5-3 ...............................................................................................13

Federal Rule of Civil Procedure 12(b)(6) ........................................................................*passim*

Federal Rule of Civil Procedure 9(b) ...............................................................................*passim*

Case 1:21-cv-00325-TWP-TAB    Document 176    Filed 12/06/24    Page 8 of 40 PageID #: 5002

Federal Rules of Civil Procedure Rule 8....................................................................................*passim*

Defendants Indiana University Health, Inc. ("IU Health"), Health and Hospital Corporation of Marion County ("HHC"), Parkview Health System, Inc. ("Parkview"), Lutheran Health Network of Indiana, LLC ("Lutheran"), Ascension Health ("Ascension"), and Community Health Network, Inc. ("Community") (collectively, "the Hospital Defendants"),[1] through undersigned counsel, respectfully submit this brief in support of their Motion to Dismiss the claims in Plaintiff-Relators John D. McCullough and James R. Holden's ("Relators") Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## INTRODUCTION

At its core, this suit is about Relators' discontent with a policy decision made by a former employer, Indiana Medicaid. That policy decision—to discontinue the use of a screening tool that Indiana Medicaid utilized to recoup potential overpayments to healthcare entities throughout the state of Indiana—was not made by any Defendant in this action. Yet, Relators contrive a ten-defendant, multi-million dollar False Claims Act ("FCA") case on that basis—seeking to hold accountable six Indiana health systems (comprised of numerous hospitals) and four managed care entities for the considered decision of the very government entity responsible for detecting and preventing such fraud. In support of their claims, Relators point to admittedly unreliable audit reports generated by a now-defunct artificial intelligence ("AI") screening tool, which Indiana Medicaid received and reviewed years prior to the filing of Relators' suit. Beyond that, Relators provide barebones, conclusory allegations regarding the Defendants named in this case. The FCA is not the proper vehicle to redress Relators' claimed harm, and their inability to allege sufficient facts to support a viable FCA claim confirms as much.

---

[1] Relators name the incorrect legal entities as to several of the Hospital Defendants. For purposes of this Motion, any unnamed entities that Relators intended (or intend) to name as defendants in the above-captioned matter reserve all rights and defenses, and the arguments set forth herein apply with equal force to them. Moreover, while the arguments presented in this Motion provide the Court ample grounds to dismiss the SAC with prejudice, at the very least, dismissal is warranted on the grounds that Relators fail to name the correct legal entities as defendants.

Starting in 2011, Indiana Medicaid used IBM Watson Health ("IBM Watson")—a contractor providing fraud and abuse detection services through an AI screening tool—to recoup overpayments and identify false claims. The AI screening tool employed a series of algorithms to generate reports of potential overpayments made by Indiana Medicaid to various entities, including the Hospital Defendants. Those reports were reviewed and vetted by Indiana Medicaid, which then sought recoupment where necessary. But in 2017, after years of observing the software's limitations, Indiana Medicaid ceased using IBM Watson as its primary source for detecting overpayments and potential fraud. Though Indiana Medicaid continued to review IBM Watson's reports, it did not seek recoupment for certain claims contained in those reports. Relators now seek to subvert Indiana Medicaid's analysis and point to those very claims as the basis of this lawsuit.

Relators allege the Hospital Defendants submitted various types of false claims purportedly identified in IBM Watson's reports. But Relators assert, without support or evidence, that every single claim identified in an IBM Watson report was false—an allegation undermined by Relators' concession that those same reports were provided to and evaluated by Indiana Medicaid, and by the IBM Watson reports themselves. That Indiana Medicaid decided *not* to pursue recoupment of the claims is fatal to Relators' case—which is perhaps one of the reasons both the U.S. Department of Justice ("DOJ") and the Attorney General for the State of Indiana declined to intervene in Relators' *qui tam* action.

Relators' 77-page SAC is legally and factually insufficient to maintain a cause of action. At the outset, the SAC is proscribed by the FCA's public disclosure bar. In addition, the SAC fails to plead with any plausibility the requisite FCA elements: falsity, scienter, materiality, and causation. For that reason, the SAC must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Even if the SAC could survive under Rule 12(b)(6) (which it cannot), it is wholly deficient of any particularity, as required by Federal Rule of Civil Procedure 9(b). Accordingly, the SAC should be dismissed *with prejudice.*

## FACTUAL AND PROCEDURAL BACKGROUND[2]

This case concerns allegations surrounding Indiana Medicaid's use of an AI screening tool, IBM Watson, for fraud detection purposes. Indiana Medicaid relied on that screening tool and its audits to assist in fraud recovery efforts beginning in 2011. SAC ¶ 30. IBM Watson used algorithms to flag potential deficiencies with Medicaid claims, including identifying possible overpayments. *Id.* ¶ 32. As Relators allege, "[i]n the typical case, once IBM's analysis identified overpayments, the Program Integrity staff at Indiana Medicaid would review the findings with IBM." *Id.* ¶ 33. The State retained all decision-making authority, and it was only "[w]hen the Program Integrity staff agreed with IBM's analysis" that "they would issue letters to Medicaid providers to recoup the overpayments." *Id.*

Thus, a claim identified on an IBM Watson report generated by its AI screening tool did not always necessitate recoupment or indicate falsity. Instead, the report findings required review by Indiana Medicaid's Program Integrity staff, along with IBM analysts in some instances, who would typically review IBM Watson's findings to make final determinations on recoupment. This made sense, as despite Relators' allegation that IBM Watson was over 99% accurate, the IBM Watson reports themselves state that there are numerous limitations to its algorithms that may result in false positives, including significant veracity issues—flagging even the slightest, immaterial noncompliance. *E.g.*, ECF 67-9 at 2 ("A portion of these encounters are likely false positives . . . ."); ECF 67-13 at 11 (noting that "[f]urther investigation is needed to ensure the accuracy of the . . . information").

Perhaps for this reason, in late 2017, Indiana Medicaid determined it would no longer use IBM Watson as its primary mechanism for detecting and/or recovering potential overpayments. SAC ¶ 36. Relator McCullough, the former Director of Medicaid's Program Integrity unit, strongly disagreed with Indiana Medicaid's decision to phase out IBM Watson. *See, e.g.*, *Id.* ¶ 37.

---

[2] To be clear, the Hospital Defendants vigorously dispute the facts as pled in the SAC but recite them herein as true as required at the motion to dismiss stage. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011), *as amended* (Jan. 3, 2012).

Shortly after Indiana Medicaid determined it would curb the use of IBM Watson in 2017, a new Director of Indiana Medicaid's Program Integrity unit was appointed—replacing Relator McCullough. *Id.* Although Indiana Medicaid stopped utilizing IBM Watson's AI screening tool as its primary mechanism to identify and/or recoup overpayments, the agency continued to receive and review IBM Watson reports until 2021, including those forming the basis of Relators' *qui tam* action. *Id.* ¶ 40. After assessing the reports, the agency, with full knowledge of the claims that IBM Watson flagged as potential overpayments, declined to initiate recovery actions. *Id.* Instead, Indiana Medicaid consistently and regularly paid those claims.

Years later, and with full knowledge of the facts outlined above, Relators filed the present *qui tam* action against six of the largest hospital systems in the State of Indiana, as well as four managed care entities ("MCEs") assigned to provide managed care coverage for Indiana Medicaid entities.[3] ECF 2; *see also* SAC. Relators set forth overbroad, implausible, and far-fetched allegations of a political conspiracy resulting in a decision to pivot away from IBM Watson as a primary fraud detection source—a decision which Relators concede was made by *Indiana Medicaid*, not Defendants.[4] SAC ¶ 36. Then, relying entirely on 2017-21 IBM Watson reports comprised of claims data that was already reviewed and rejected as immaterial by Indiana Medicaid, Relators allege that IBM Watson identified eight different categories of improper claims that Relators now argue were "false" as defined by the FCA. *Id.* at iv. In particular, Relators allege that the Hospital Defendants: (1) submitted inpatient admission claims despite readmission by the beneficiary within 72 hours; (2) failed to use the proper

---

[3] Relators filed their initial complaint in February 2021, naming 68 defendants. They filed an amended complaint in May 2021, expanding the list of defendants to 71. And finally, in August of 2024, they filed the operative complaint naming the Hospital Defendants and MCEs herein.

[4] As is clear from the SAC, Relators' claims ultimately amount to a complaint against Indiana Medicaid, a state agency, for its decision to curtail the use of IBM Watson to identify and recoup overpayments, which Relators allege constitute false claims. But the U.S. Supreme Court has held that a private individual may not bring suit in federal court on behalf of the United States against a state agency under the FCA. *See Vermont Agency of Nat. Res. v. U.S. ex rel. Stephens*, 529 U.S. 765, 787–88 (2000). Perhaps that is why Relators have attempted to shoehorn their grievances with Indiana Medicaid into an inappropriate and misplaced FCA action against the Hospital Defendants.

"transfer" code when moving beneficiaries between hospitals; (3) submitted inpatient claims for beneficiaries who were admitted for less than 24 hours; (4) submitted claims for services provided after beneficiaries' death;[5] (5) submitted duplicate claims for the same service; and (6) submitted claims for injection services separate from treatment room services claims for the same patient on the same date of service.[6] *Id.* Relators further allege that the Hospital Defendants had "ample awareness of their obligation to avoid submitting these types of improper claims to Medicaid" because, in general, "Indiana Medicaid frequently issued bulletins, 'banner' alerts, and updates to healthcare providers *like the* Hospital Defendants regarding these types of improper billing practices," (emphasis added) and "attended regular training sessions offered by Indiana Medicaid that emphasized" their obligation to refrain from submitting improper claims. *Id.* ¶ 8.

Relators nonetheless concede that Indiana Medicaid has been in possession of the relevant IBM Watson reports from the outset, and—most importantly—reviewed and rejected as immaterial *all of those claims* that are the subject of their suit. *Id.* ¶ 40 ("[T]he Program Integrity team at Indiana Medicaid did not pursue recoupment based on . . . overpayment findings generated by IBM between 2018 and 2021—including the findings at issue in this *qui tam* action.").

With these facts in hand, on July 14, 2023, after a two-and-a-half-year investigation, DOJ notified the Court that the United States would not intervene. ECF 32. And on April 8, 2024, after a three-year investigation, the State of Indiana did the same. ECF 40. The decision not to intervene by both of these government entities was sound: even as pled, the allegations do not state a cause of action under the FCA for which relief can be granted, and fall far short of the heightened pleading requirement under Federal Rule of Civil Procedure 9(b).

---

[5] This allegation applies to IU Health, Ascension, Community, and Parkview only.

[6] This allegation applies to HHC, Parkview, IU Health, Community, and Lutheran only.

**STANDARD OF REVIEW**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). In ruling on a motion to dismiss, a court must construe plaintiff's factual allegations as true, but "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011), *as amended* (Jan. 3, 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). And dismissal is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 558 (2007).

In addition, "[c]laims arising under the FCA, an antifraud statute, are subject to Rule 9(b)'s heightened pleading standard." *Lanahan v. Cnty. of Cook*, 41 F.4th 854, 861−62 (7th Cir. 2022) (citing *U.S. ex rel. Mamalakis v. Anesthetix Mgmt. LLC*, 20 F.4th 295, 301 (7th Cir. 2021)). Rule 9(b) requires a plaintiff alleging fraud to state the circumstances constituting fraud "with particularity." Fed. R. Civ. P. 9(b). "The complaint must describe the 'who, what, when, where, and how' of the fraud to survive a motion to dismiss." *U.S. v. Molina Healthcare of Illinois, Inc.*, 17 F.4th 732, 739 (7th Cir. 2021) (citing *U.S. ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016)) (citation omitted). "The heightened pleading requirement in fraud cases 'forces the plaintiff to conduct a careful pretrial investigation' to minimize the risk of damage associated with a baseless claim." *U.S. ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 840 (7th Cir. 2018) (quoting *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748−49 (7th Cir. 2005)). Relators have not done so here.

**ARGUMENT**

Because DOJ and the State of Indiana have declined to intervene, Relators "must carry the burden of alleging a claim that the Defendants defrauded the United States." *U.S. ex rel. Enloe v. Heritage Ops. Grp., LLC*, 622 F. Supp. 3d 679, 686 (N.D. Ill. 2022). Relators fail to do so on numerous fronts.

Their claims against the Hospital Defendants should be dismissed in their entirety *with prejudice* because (1) they are based on information already known to the government and are thus precluded by the FCA's public disclosure bar; (2) they fail to state a claim under which relief can be granted and should be dismissed per Federal Rule of Civil Procedure 12(b)(6); and (3) they lack the requisite particularity under Federal Rule of Civil Procedure 9(b).

## I.    Relators' Claims Are Barred By The Public Disclosure Doctrine.

Relators' claims under the FCA fail first and foremost because the information underlying their claims has *always* been known to the government—a fact fatal to Relators' *qui tam* suit.

The FCA's "public disclosure bar" requires dismissal of a *qui tam* claim if substantially the same allegations in the complaint were already disclosed through an appropriate channel. *See* 31 U.S.C. § 3730(e)(4) (2022).[7] This is because "[t]he point of public disclosure of a false claim against the government is to bring it to the attention of the *authorities*, not merely to educate and enlighten the public at large about the dangers of misappropriation of their tax money." *Cause of Action v. Chicago Transit Auth.*, 815 F.3d 267, 274 (7th Cir. 2016) (alteration in original) (emphasis added) (quoting *United States v. Bank of Farmington*, 166 F.3d 853, 861 (7th Cir. 1999)) (quotations omitted). To determine whether the bar applies, courts examine whether (1) information was "publicly disclosed"; (2) the relator's claim is "substantially similar" to the disclosed information; and (3) the relator is an "original source." *Bellevue v. Univ. Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 718 (7th Cir. 2017). The Relators "bear[] the burden of proof at each step of the analysis[,]" *id.* (quotations and citations omitted), and

---

[7] The IFCA provides a similar bar on claims premised on publicly disclosed information. In particular, Ind. Code § 5-11-5.7-7(e) precludes FCA claims based on information contained in, among other things, "a legislative, an administrative, or another public state report, hearing, *audit, or investigation*," unless the parties bringing the action "voluntarily disclose[d] to the state the information on which the allegations . . . are based" before it was made public, or have "[information] that is independent of and materially adds to the publicly disclosed allegations or transactions" which was "voluntarily provided . . . to the state before an action [was] filed . . . ." *Id.* (emphasis added). The bar serves to "stifl[e] parasitic lawsuits." *State ex rel. Holden v. Ice Miller, LLC*, 211 N.E.3d 14, 21 (Ind. Ct. App. 2023) (citation omitted). Accordingly, and for the reasons stated herein, the Court should dismiss Relators' IFCA claims as precluded by Indiana's public disclosure bar.

if the first two prongs point in the affirmative and the third in the negative, then dismissal is mandatory—as is the case here.

The first prong of the public disclosure test examines "whether the allegations in the complaint have been 'publicly disclosed' through one of the enumerated channels." *Chicago Transit Auth.*, 815 F.3d at 274 (citing *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009)). The Seventh Circuit has recognized that "public disclosure" does not require that each citizen have access to the information; instead, items are "publicly disclosed" where the "facts disclosing the fraud itself are in the *government's possession*." *Chicago Transit Auth.*, 815 F.3d at 274 (emphasis added) (citing *U.S. ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 708 (7th Cir. 2014)). Such is the case here, where Relators concede that the source of *all* of their claims—the IBM Watson reports—were not only in the possession of the government employees charged with enforcement of Indiana's Medicaid regulations, but actually reviewed by those employees before they affirmatively declined to pursue recoupment. SAC ¶ 40 ("[T]he Program Integrity team at Indiana Medicaid did not pursue recoupment based on . . . overpayment findings generated by IBM between 2018 and 2021—including the findings at issue in this *qui tam* action."). Thus, the first prong can be answered in the affirmative: the information forming the basis of Relators' claims was disclosed "to a competent public official . . . [ and is a] public disclosure within the meaning of § 3730(e)(4)(A)" because "disclosure to the public official responsible for the claim effectuates the purpose of disclosure to the public at large" and "constitutes public disclosure within the meaning of [the public disclosure bar]." *See generally Chicago Transit Auth.*, 815 F.3d at 275; *Bank of Farmington*, 166 F.3d at 861.

Proceeding to the second prong, if it is determined that the information has been publicly disclosed as defined by the Seventh Circuit, the Court must then determine whether the Relators' suit is "based upon," *i.e.,* "substantially similar to," those publicly disclosed allegations. *Bellevue*, 867 F.3d

at 718.[8] Once again, this query can be answered in the affirmative. The information in the IBM Watson reports is *exactly* the same as what Relators now provide—indeed, the alleged false claims identified in the SAC are a mere recitation of the IBM Watson reports that originally identified the claims as potential overpayments. *Compare* ECF 67-12 at 5 (IBM Watson stating that the purpose of its analysis "was to identify inpatient claims and encounters where the patient may have been admitted for less than 24 hours" and the "claims should have been billed as outpatient claims"), *with* SAC ¶¶ 246, 248 ("IBM Watson conducted an algorithmic audit 'to identify inpatient claims and encounters where the patient may have been admitted for less than 24 hours'" and "[b]ased on this analysis, IBM Watson determined that all the Hospital Defendants regularly submitted in-patient claims . . . where the length of stay was clearly under 24 hours").

As the disclosed information is literally identical to the allegations in the SAC, the final question in the public disclosure analysis is whether the relator "is an 'original source' of the information upon which [the] lawsuit is based." *U.S. ex rel. McGee v. IBM Corp.*, 81 F. Supp. 3d 643, 658 (N.D. Ill. 2015) (*quoting Glaser*, 570 at 913.). In order to survive the public disclosure bar as an original source, relators must show that they have "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions" and "has voluntarily provided the information to the Government before filing [its] action." 31 U.S.C. § 3730(e)(4)(B).

Relators provide the Government nothing new or of value. Relators' entire SAC is premised on IBM Watson reports, which Indiana Medicaid evaluated years prior to Relators' filing. To be sure, Relators cannot assert that they "voluntarily provided" the IBM Watson reports and findings to the

---

[8] Factors used to determine whether a relator's allegations are based upon those already publicly disclosed include whether the relator's allegations: (1) "present genuinely new and material information beyond what has been publicly disclosed"; (2) "allege 'a different kind of deceit'"; (3) "require 'independent investigation and analysis to reveal any fraudulent behavior'"; (4) "involve an entirely different time period than the publicly disclosed allegations"; and (5) "supplied vital facts not in the public domain." *Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 719 (7th Cir. 2017) (citations omitted).

State of Indiana or any other governmental entity prior to filing their *qui tam* action as required by the public disclosure bar because the information originated with the state regulators. Indiana Medicaid assessed the IBM Watson reports without the help or assistance of Relators and reached a different conclusion—both as to IBM Watson and the claims at issue—from the one Relators now seek to enforce through their FCA claims. *See* SAC ¶ 40. Relators cannot simply regurgitate the same information the Government already rejected—the public disclosure bar forbids it, and for good reason. *See, e.g., U.S. ex rel Feingold v AdminaStar Fed. Inc.*, 324 F.3d 492 (7th Cir. 2003) (applying the public disclosure bar where administrative reports generated by the relevant agency contained the critical elements of the alleged fraud); *see also Chicago Transit Auth.*, 815 F.3d 267. Relators cannot amend the SAC to avoid the public disclosure bar, justifying dismissal of this matter with prejudice.

## II. Relators Fail To State A False Claims Act Violation, Requiring Dismissal Under Federal Rule Of Civil Procedure 12(b)(6).

Dismissal is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Relators allege that the Hospital Defendants violated the FCA and Indiana Medicaid False Claims and Whistleblower Protection Act ("IFCA")[9] by knowingly presenting false claims for payment to the government, making and using false statements, and knowingly and improperly avoiding an obligation to repay the government by knowingly retaining overpayments from the government, also known as reverse false claims. *See* SAC ¶¶ 307–334.

However, Relators fail to allege any facts supporting the conclusion that the Hospital Defendants in fact committed these violations. To adequately allege a violation of the FCA, Relators must plead that: (1) the defendant made a false claim for payment to the Government (falsity); (2) the

---

[9] "The IFCA is the nearly identical Indiana State law equivalent of the FCA," and thus is analyzed under the same standards. *See U.S. ex rel. Swiney v. Cmty. Integration Support Servs., LLC*, No. 1:20-cv-00717-JMS-TAB, 2022 WL 2916566 (S.D. Ind. July 25, 2022) (internal citations omitted) *appeal dismissed*, No. 23-2318, 2023 WL 9060991 (7th Cir. Sept. 18, 2023); *United States v. Wagoner*, No. 2:17-CV-478-TLS, 2018 WL 4539819 (N.D. Ind. Sept. 20, 2018)). As such, all arguments advanced against Relators' FCA claims apply with equal force to Relators' IFCA claims.

defendant had knowledge of the claim's falsity (scienter); (3) the claim was material to the Government's decision to pay the claim (materiality); and (4) the claim resulted in payment by the government (causation). *Molina*, 17 F.4th at 740 (citing *U.S. ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017)). Relators set forth only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which are plainly insufficient to survive a motion to dismiss. *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). This Court is not obligated to accept "bald assertions" and "unsupported conclusory statements" on a motion to dismiss; rather, dismissal is warranted where, as here, there is little *besides* bald assertions and conclusions. *Lanahan*, 41 F.4th at 862 (quoting *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020)).

### A.    Relators Do Not Adequately Allege That Any Claim Was False.

To begin, as with every FCA claim, Relators must allege facts that "permit the reasonable inference that the defendant[s] presented false claims to the government." *See U.S. ex rel. Zverev v. USA Vein Clinics of Chicago, LLC*, 244 F. Supp. 3d 737, 745 (N.D. Ill. 2017); *see also U.S. ex rel. Baltazar v. Warden*, 635 F.3d 866, 870 (7th Cir. 2011) ("A relator need not have seen the claims submitted to the federal government . . . but must know enough to make fraud a likely explanation for any overbilling. . . .") (citations omitted).

Here, Relators are undermined by the *very* IBM Watson reports on which their claims are premised, and which are attached to the SAC.[10] Relators rely on the AI screening tool analyses to identify "potentially" false claims, but the parameters of the analyses are insufficient to determine legal falsity under the FCA. In most cases, IBM Watson couched its results by framing each claim as a *potential* overpayment, not a conclusive finding. For that reason, the reports all contain express

---

[10] The Court may consider the exhibits to the SAC when ruling on the Hospital Defendants' Motion to Dismiss. *See Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). And the Court is "free to consider any facts set forth in the complaint that undermine the plaintiff's claim," "includ[ing] exhibits attached to the complaint . . . ." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (quotations and citations omitted).

statements of limitations of the algorithm, which are attributed to false positives, or otherwise unreliable results, and required additional review by IBM Watson and Indiana Medicaid to identify actual overpayments. That is not enough to plead falsity under the FCA.

Take, for example, Relators' allegation that the Hospital Defendants submitted inpatient claims for stays less than 24-hours, in violation of Indiana Medicaid's Policy Manual. To support this allegation, Relators rely on an IBM Watson whitepaper titled "One- and Two-Day Inpatient Stays SFY 2021," ECF 67-12, which is riddled with holes. First, IBM Watson assumes the claims data it analyzed was accurate without ever having verified that information—meaning the underlying data, if inaccurate, could have compromised IBM Watson's findings. *Id.* at 11. Further, IBM Watson concedes that the results of its analysis are unreliable and subject to false positives for too many reasons to list in its report, and none of which it attempted to resolve or vet. *Id.* Perhaps more problematic, IBM Watson flags potential overpayments based on the claim status—*i.e.*, it only identifies overpayments where Indiana Medicaid paid for the claim. But in its report, IBM Watson notes that it is "especially concerned about the latest claim status for each encounter" because it is unsure whether identified claims were paid, voided, or denied—that is, IBM Watson is *unsure* of whether claims are even potential overpayments, because some (or all) of the identified payments could have been voided by the submitter or denied by Indiana Medicaid, thus resulting in no payment at all. *Id.* ("We are also concerned that duplicate encounters exist in the data due to MCEs not submitting void records when they submit replacement encounter records," which "would result in multiple encounter records

existing in the data.") (emphasis omitted); *id.* (noting that IBM Watson "did not perform a medical record review to determine if the services were actually rendered").[11]

These limitations are not exclusive to the 24-hour stay whitepaper but appear in nearly all IBM Watson reports. *See, e.g.,* ECF 67-6 at 8 ("Hospital Transfer SFY 2018"); ECF 67-13 at 11 ("Services After Death SFY 2021"); ECF 67-15 at 10 ("Duplicate Inpatient Claims SFY 2019"). IBM Watson also conceded in the improper injections report that it could not verify whether claims for injection services were submitted during separate, same-day visits which would have resulted in valid, payable claims. ECF 68-14 at 9. Perhaps because of the glaring deficiencies in the data and reports themselves, some of the IBM Watson reports recommend sending self-audit letters to the billing providers to have them determine whether the claims were billed correctly. *See, e.g.,* ECF 67-6 at 14; ECF 67-15 at 5.

Perhaps the most egregious example of IBM Watson's unreliability is the fact that its services after death report—the entire basis for Relators' allegations that Hospital Defendants submitted claims for services rendered to already-deceased individuals—expressly states that "[f]urther investigation is needed to ensure the accuracy of the [Death Master File] information and to ensure that recipients . . . are truly deceased." ECF 67-13 at 11. IBM Watson also admits that "[o]ur data does not include the date that a death date was entered into the IHCP's recipient database. There is the possibility that the recipient's death date was entered *after* a service was rendered . . ." but that the service was in fact rendered before death. *Id.* (emphasis in original). Once again, Relators rely on a

---

[10] Further, this report uses an algorithm that is clearly inconsistent with the regulations Relators allege were violated. The IBM Watson report analyzes "one- *and two-day* inpatient stays" by measuring the day a patient was discharged, not the hours before a patient was discharged, ECF 67-12 (emphasis added). But the Indiana Medicaid regulatory guidance only imposes a requirement for beneficiaries who are discharged within 24-hours—i.e., one day. *See* 405 Ind. Admin. Code 1-10.5-3. Given this, the report is susceptible to false positives. For example, a beneficiary may be admitted on November 15 at 12:00 AM, and discharged on the next calendar day, November 16 at 11:59 PM, for a total stay of just under 48 hours. But this compliant inpatient claim would ultimately be flagged by IBM Watson for being a "next-day" discharge. Thus, the algorithm is inherently unreliable, and its findings cannot be used as reliable evidence of falsity.

report from an AI screening tool to pass off potential overpayments as false claims—which cannot be supported.

Further, even *if* the "potential" overpayments listed by IBM Watson reports were indeed "overpayments"—which is not supported by Relators' own exhibits to the SAC—not every overpayment is a "false" claim under the FCA. "[E]rrors based simply on faulty calculations or flawed reasoning," "innocent mistakes," or "negligence" are not "false" under the FCA. *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999) (citations omitted). Thus, to bring a claim under the FCA, Relators must allege more than a failure to comply with regulatory requirements. *See U.S. ex rel. Suarez v. AbbVie Inc.*, No. 15 C 8928, 2019 WL 4749967, at *10 (N.D. Ill. Sept. 30, 2019).

Here, Relators have failed to provide the "something more" necessary to adequately plead that potential overpayments identified in the IBM Watson reports were indeed false. At best, they rely on several IBM Watson reports that admit the AI screening tool suffers from significant veracity issues, and at worst rely exclusively on conclusory spreadsheets aggregating data of potential overpayments. *See* ECF 67-10; 67-11; 68-1; 68-3; 68-8; 68-9; 68-10; 68-11; 68-12; 68-13. In any event, none of this information comes close to stating falsity, and, as a result, Relators' claims lack merit. A "relator cannot 'merely describe a private scheme in detail,' and then tack on allegations of fraudulent billing 'without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government.'" *Heritage Operations Grp., LLC*, 622 F. Supp. 3d at 690 (quoting *U.S. ex rel. Dolan v. Long Grove Manor, Inc.*, No. 10 C 368, 2014 WL 3583980, at *3 (N.D. Ill. July 18, 2014)).

**B.    Relators Do Not Adequately Allege Scienter.**

To further this point, an "essential element[] of an FCA violation" is "the defendant's knowledge of the claim's falsity." *U.S. ex rel. Schutte v. SuperValu, Inc.*, 598 U.S. 739, 747 (2023); *see also Molina*, 17 F.4th at 739-740 ("A successful claim requires proof both that the defendant made a

statement to receive money from the government and that he made that statement knowing it was false."). It is not enough for Relators to allege that the Hospital Defendants submitted a false claim. Relators must also allege that the claims were submitted with the requisite knowledge *at the time the claims were submitted*. *Schutte*, 598 U.S. at 752.

The U.S. Supreme Court made clear that the knowledge analysis under the FCA "refers to respondents' knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *U.S. ex rel. Heath v. Wisconsin Bell, Inc.*, 92 F.4th 654, 663 (7th Cir. 2023), *cert. granted sub nom. Wisconsin Bell, Inc. v. United States*, 144 S. Ct. 2657 (2024) (quoting *Schutte*, 598 U.S. at 749) (quotations omitted). And under the FCA, knowledge encompasses "three mental states: First, that the person 'has actual knowledge of the information,' 31 U.S.C. § 3729(b)(1)(A)(i). Second, that the person 'acts in deliberate ignorance of the truth or falsity of the information,' § 3729(b)(1)(A)(ii). And, third, that the person 'acts in reckless disregard of the truth or falsity of the information,' § 3729(b)(1)(A)(iii). In short, either actual knowledge, deliberate ignorance, or recklessness will suffice." *Schutte*, 598 U.S. at 749-50. Relators have established none.

The SAC fails to adequately plead scienter under any standard because it is wholly devoid of facts supporting a reasonable inference that the Hospital Defendants submitted false claims with the subjective knowledge that the claims were false at the time they were submitted. Instead, Relators' allegation of the Hospital Defendants' knowledge amounts to nothing more than conclusory statements and allegations that the Hospital Defendants were aware of their legal obligations, through general, industry-wide "bulletins" or trainings provided by Relator McCullogh in his capacity as director of Indiana Medicaid's Program Integrity unit. *See, e.g.*, SAC ¶ 8. As an initial matter, Relators attach a June 2015 PowerPoint presentation—from at least a year and a half before any of the complained-of claims were submitted—to demonstrate the type of trainings the Hospital Defendants supposedly attended or received (although the exhibit does not include an attendance list or other

indication of who received this training). *See* ECF 67-5.[12] Indeed, this allegation requires a tremendous leap of logic and numerous assumptions to reasonably conclude that Defendants possessed the requisite knowledge under the FCA. Relators do not describe any communications, statements, or even conduct that plausibly suggests any Hospital Defendants knew or should have known that their claims were false. Instead, Relators allege that all Hospital Defendants—without specifying any individuals or groups—were aware of the entire universe of general billing requirements they allegedly violated, and that they were aware of their obligation to implement internal controls for fraud detection. Relators' logic then becomes circular: they claim that because the IBM Watson reports—to which the Hospital Defendants were never privy—show alleged false claims under various billing requirements, the Hospital Defendants knew or should have known that the submitted claims were false. *See, e.g.*, SAC ¶ 233 ("Each [Hospital Defendant] not only was aware of Medicaid's prohibition against [violation] . . ., but each also had expressly agreed in its provider agreement to 'abide' by those requirements. Further, those defendants had notice of the need to monitor and prevent such claims . . . . However, as the IBM analysis makes clear, these Hospital Defendants knowingly disregarded their express undertaking and their legal obligation . . . .").

Relators thus seemingly try to leverage the IBM Watson reports to turn the FCA into a strict liability statute by inferring knowledge from an AI screening tool's analyses. But without a single allegation of conduct, communications, statements, or anything that could plausibly illustrate that any one Defendant possessed actual knowledge, ignorance, or recklessness of the claims at issue, there is no way Relators can plead scienter under even the most permissive standard.

The Seventh Circuit and its district courts have rejected claims alleging the defendant's behavior was "knowing" without providing any additional information supporting such an inference.

---

[12] Further, this PowerPoint presentation only cursorily covers *one* of the overpayment issues complained of in the SAC as to Hospital Defendants, and it does not cover *any* of the other alleged overpayment issues. *Id.* at 8 (stating that two-day inpatient stays are an audit focus).

*See, e.g., Lanahan*, 41 F.4th at 865 (relator failed to adequately allege scienter where the complaint was "wholly silent" as to defendant's "knowledge or lack thereof"); *U.S. ex rel. Grenadyor v. Ukrainian Village Pharmacy, Inc.*, 772 F.3d 1102, 1108 (7th Cir. 2014) (relator failed to plead that defendant pharmacy acted "with the intention of defrauding the government"); *Suarez*, 2019 WL 4749967 at *13-14 (relator failed to adequately allege scienter by failing to plead facts from which court could infer defendant knew its program was unlawful). This Court should follow suit. Relators fail to allege any facts amounting to a plausible inference that the Hospital Defendants knew their claims were false, that they were aware of a substantial risk that their claims were false, that they intentionally avoided taking steps to confirm the truth or falsity of those claims, or that they were aware of a substantial and unjustifiable risk that their claims were false but submitted them anyway. As a result, Relators fail to allege facts that would support any finding of knowledge.

### C.    Relators Do Not Adequately Allege That Any False Claim Submission Was Material.

Relators' own pleading acknowledges the government accorded little weight to the alleged "false" claims forming the basis of their complaint—outwardly conceding a key element of an FCA violation. Even if a false claim is submitted with the requisite knowledge (not the case here), "[i]t is not enough simply to say that the government required compliance with a certain condition for payment[,]" and thus a FCA violation occurred. *Molina*, 17 F.4th at 740. Instead, there must be materiality: "[t]he facts must indicate that the government actually attaches weight to that requirement and relies on compliance with it." *Id.*; *see also Berkowitz*, 896 F.3d at 842-43; *Lamers*, 168 F.3d at 1020 ("[T]he FCA is not an appropriate vehicle for policing technical compliance with administrative regulations."); *Grenadyor*, 772 F.3d at 1107 ("Violating a regulation is not synonymous with filing a false claim.").

Here, at most, Relators plead that Indiana Medicaid conducted a single training (for whom it remains unclear) in 2015 that warned against *some* of the violations alleged in the SAC. Beyond that,

Relators cite to an undefined number of generalized bulletins, banner alerts, and updates warning of "common improper billing practices," and catch-all provisions in Medicaid's 2023 provider agreement—a version under which none of the claims at issue were submitted requiring compliance with "all applicable" laws and regulations.[13] But this is not enough. The Supreme Court has made clear that because the FCA "is not an all-purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations," "[t]he materiality standard is demanding." *Universal Health Services, Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 194 (quotations and citations omitted); *U.S. ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Indiana, Inc.*, 305 F. Supp. 3d. 964, 976 (S.D. Ind. 2018) ("Materiality is a familiar and rigorous standard to be enforced as necessary on a motion to dismiss.") (quotations omitted); *United States v. Luce*, 873 F.3d 999, 1011 (7th Cir. 2017) (explaining that courts must "undertake a rigorous materiality inquiry[]"). As the Supreme Court observed in *Escobar*, "billing parties are often subject to thousands of complex statutory and regulatory provisions. Facing [FCA] liability for violating any of them would hardly help would-be defendants anticipate and prioritize compliance obligations." 579 U.S. at 192. As a result, the Court held that "statutory, regulatory, and contractual requirements are not automatically material, even if they are labeled conditions of payment." *Id.* at 178.

Importantly, Relators not only fail to plead materiality, they concede its absence. Materiality is determined by whether the alleged misrepresentation has "a natural tendency to influence, or be capable of influencing," the government's decision to pay. *Kietzman*, 305 F. Supp. 3d at 976 (quoting 31 U.S.C. § 3729(b)(4)). Put another way, "[u]nder any understanding of the concept, materiality looks to the effect on the likely *or actual* behavior of the recipient of the alleged misrepresentation." *Escobar*,

---

[13] None of which may serve as the basis for an enforcement action against the defendants by regulators. As the Supreme Court held in *Kisor v. Wilkie*, 588 U.S. 558, 584 (2019), "An interpretive rule itself never forms the basis for an enforcement action—because, as just noted, such a rule does not impose any legally binding requirements on private parties. An enforcement action must instead rely on a legislative rule, which (to be valid) must go through notice and comment." (internal citations omitted).

579 U.S. at 193 (emphasis added) (quotations and citations omitted). In the instant matter, Relators explain that in the typical case, Indiana Medicaid's Program Integrity staff reviewed each IBM Watson report with IBM staff and ultimately pursued recovery "[w]hen the Program Integrity staff agreed with IBM's analysis." SAC ¶ 33. Relators further explain that "Indiana Medicaid did not pursue recoupment based on a number of [allegedly] valid overpayment findings generated by IBM between 2018 and 2021—*including the findings at issue in this qui tam action*." *Id.* at ¶ 40 (emphasis added). Thus, Relators outwardly admit that Indiana Medicaid had knowledge of the claims at issue, reviewed those claims with IBM Watson, and affirmatively decided *not* to pursue recovery—a clear expression that the agency did not regard Defendants' alleged violations as material to payment.

In addition, the Supreme Court in *Escobar* noted that whether the government paid a particular claim in full despite its actual knowledge that certain requirements were violated is very strong evidence that those requirements were immaterial, particularly where the government regularly pays such claims. 579 U.S. at 194-95. The Seventh Circuit expressly applied this standard in *U.S. v. Sanford-Brown, Ltd.*, holding that "it is not enough to show that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." 840 F.3d 445, 447 (7th Cir. 2016). Rather, materiality depends on the "*likely* or *actual* behavior of the recipient of the alleged misrepresentation." *Id.* Thus, even accepting Relators' (incorrect) allegations that *every* claim identified on an IBM Watson report is false, Indiana Medicaid's decision to pay and affirmative decision not to recoup such claims is fatal to Relators' case. Far from "alleg[ing] that the Government's decision to pay would have been different had it known of the alleged regulatory violations," Relators' allegations show the exact opposite. *Heritage Operations Grp., LLC*, 622 F. Supp. 3d at 693; *see also Molina*, 17 F.4th at 740 ("It is not enough simply to say that the government required compliance with a certain condition for payment. The facts must indicate that the government actually attaches weight to that requirement

- 19 -

and relies on compliance with it."); *Luce*, 873 F.3d at 1011 (explaining that courts must "undertake a rigorous materiality inquiry").

In sum, "'since the Government decides on payment . . . it is the Government's materiality decision that ultimately matters.'" *United States v. Joel Kennedy Constructing Corp.*, 584 F. Supp. 3d 595, 619 (N.D. Ill. 2022) (finding a failure to plead materiality) (quoting *Petratos*, 855 F.3d at 492). Indiana Medicaid already decided the materiality of such claims by paying them at the outset, reviewing them in light of the IBM Watson reports, and choosing not to seek recoupment.

### D.    Relators Do Not Adequately Allege Causation.

The final element of an FCA claim is causation. In the 7th Circuit, relators must allege facts that the defendants' false certifications were "a substantial factor in bringing about" the government's loss and that the loss is a "type that a reasonable person would see as a likely result of [defendants'] conduct." *Luce*, 873 F.3d at 1012 (quoting *Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012)) (quotations omitted); *see also Molina*, 17 F.4th at 745. Relators must also allege the violation proximately caused the alleged injury. *See Luce*, 873 F.3d at 1011-14. In other words, the pecuniary losses must be "within the foreseeable risk of harm" that the false claim created. *Id.* at 1011-12 (quoting Restatement (Second) of Torts § 548A cmt. A (Am. Law. Inst. 1977). Relators do neither.

In the SAC, Relators fail to allege any facts suggesting that Defendants acted in a way that would foreseeably result in the submission of false claims. Aside from implausibly alleging that the claims at issue are false, there are no allegations of any conduct that caused the false claims such as inadequate standards and procedures, internal control failures, other policies or procedures that could reasonably result in false claims, or, as stated above, fraudulent conduct by an individual or group of employees. Relators fail to allege any facts suggesting *how* these purportedly false claims occurred, only *that* they occurred.

And, as with other FCA elements, Indiana Medicaid's review and rejection of the IBM Watson reports used as the basis for Relators' SAC demonstrate that the Hospital Defendants' submissions are far from a "substantial factor" in bringing about the government's loss, *Luce*, 873 F.3d at 1012, and that any reasonable person would not foresee any loss as a likely result of the defendants' continued submission of claims that the government had repeatedly, and consistently paid.

As is the case with each and every FCA element, Relators' allegations do not pass muster, and Relators' SAC should be dismissed *with prejudice*.

### E.   Relators Do Not Plead "Reverse False Claims."

In addition to pleading the submission of false claims under §§ 3729(a)(1)(A) and (B), Relators also advance equally deficient allegations of "reverse false claims" under § 3729(a)(1)(G). SAC ¶¶ 319-21. "[A] reverse false claim under § 3729(a)(1)(G) proscribes 'knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceal[ing] or knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the Government.'" *Lanahan*, 41 F.4th at 864 (quoting § 3729(a)(1)(G)). Claims under § 3729(a)(1)(G) require Relators to plead that the Hospital Defendants retained overpayments from the government. *See U.S. ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 835-36 (7th Cir. 2011); *see also U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 122 (2d Cir. 2021) (analyzing § 3729(a)(1)(D)). But it is not enough to simply retain overpayments, 31 U.S.C. § 3729(a)(1)(G) also requires Relators to plead that the defendants (1) knew or should have known that they received overpayments, ("a false statement") and (2) acted to "conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." *Yannacopoulos*, 652 F.3d at 835, 836.

Relators' reverse FCA allegations fail for two reasons. *First,* the allegations rely entirely on the same alleged acts and transactions as Relators' FCA claims brought under §§ 3729(a)(1)(A) and (B).

When a reverse FCA claim is "based on the same submissions of false statements and records underlying claims brought pursuant to" the FCA under §§ 3729(a)(1)(A) and (B), the "reverse false claim should be dismissed as redundant." *U.S. ex rel. Myers v. Am.'s Disabled Homebound, Inc.*, No. 14 C 8525, 2018 WL 1427171, at *3 (N.D. Ill. Mar. 22, 2018) (citing *U.S. ex rel. Besancon v. Uchicago Argonne, LLC*, No. 12 C 7309, 2014 WL 4783056, at *4 (N.D. Ill. Sept. 24, 2014) (dismissing relator's reverse false claims allegations brought under § 3729(a)(1)(G) as redundant and inconsistent with the intent of the FCA after finding they relied on the same facts and transactions as claims brought under §§ 3729(a)(1)(A) and (B)). In line with their traditional FCA presentment claims, Relators rely on the premise that the Hospital Defendants were aware of certain general legal obligations to submit accurate claims and that they knowingly violated those obligations. Relators do not allege any facts different or independent of their FCA claim. In other words, Relators allege that by the very submission and payment of the false claims they cite throughout the SAC—and nothing more—the Hospital Defendants necessarily violated the reverse false claims provision. These are the exact type of claims that the courts in *Myers* and *Besancon* dismissed as redundant and inconsistent with the intent of the FCA. The Court should follow suit here.

*Second*, Relators fail to allege any facts that would suggest the Hospital Defendants were aware that they received overpayments, let alone took any steps to conceal or reduce their obligation to return those overpayments. Aside from overbroad, conclusory allegations regarding a 2015 training (to whom, it remains unclear), Relators set forth nothing more concerning the Hospital Defendants' retention of the alleged false claims payments. Relators, moreover, do not allege any facts regarding the Hospital Defendants' access to, review, or awareness of the IBM Watson reports detailing the allegedly false claims (or the information underlying them). Relators must plead enough facts to allow the Court to conclude it is plausible that the Hospital Defendants were somehow aware, or should have been aware, of a legal obligation to repay the government, and knowingly took steps to avoid

payment or reduce the amount owed. *U.S. ex rel. Stone v. OmniCare, Inc.*, No. 09 C 4319, 2011 WL 2669659, at *4 (N.D. Ill. July 7, 2011) (citing S. Rep. N. 111-10, at 15 (2009)); *see also Kane ex rel. U.S. v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 386-88 (S.D.N.Y. 2015). Relators fall far short. Without more, Relators have not (and cannot) plead the scienter required by the statute. *See Lanahan*, 41 F.4th at 864. Thus, their reverse false claims cause of action should be dismissed.

*　　　　　*　　　　　*

In sum, Relators' allegations fall far short of stating a claim under the False Claims Act, and the SAC should be dismissed *with prejudice* in its entirety.[14]

## III.    Relators Fail To Plead With Particularity As Required By Federal Rule Of Civil Procedure 9(b).

Even if Relators state a claim on which relief can be granted—they do not—the SAC should be dismissed for failure to plead with particularity. As discussed above, the "who, what, when, where, and how" of a FCA allegation must specifically identify an actual false claim or statement and specify how or why Government payment of money was conditioned thereon. *Molina*, 17 F.4th at 739 (citing *Presser*, 836 F.3d at 776). Indeed, Relators must plead facts as to the time, place, and substance of the Hospital Defendants alleged frauds, and who engaged in them. *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, No. 1:03-CV-0680-SEB/WTL, 2007 WL 4557773, at *5 (S.D. Ind. Dec. 20, 2007); *see also U.S., ex rel. Hoffman v. Nat'l Coll.*, No. 3:12-CV-237-TLS, 2013 WL 3421931, at *6 (N.D. Ind. July 8, 2013) (citations omitted). Relators fall far short.

---

[14] The Court should also dismiss the IFCA claim for failure to satisfy Rule 12(b)(6), since the IFCA "mirrors the Federal FCA in all material respects." *Kuhn v. LaPorte County Comprehensive Mental Health Council*, No. 3:06-CV-317 CAN, 2008 WL 4099883, at *3, n.1 (N.D. Ind. Sept. 4, 2008); *see U.S. ex rel. Howze v. Sleep Centers Fort Wayne, LLC*, No. 1:11-CV-035 JD, 2016 WL 1358457, at *1 (N.D. Ind. Apr. 6, 2016) (referring to the IFCA as the FCA's "nearly identical state counterpart"). Regardless of whether the Court wishes to reach the IFCA claims, because the Court should dismiss Relators' FCA claims for the reasons explained above, it should decline to exercise supplemental jurisdiction over Relators' state law claim pursuant to *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014) (affirming district court's declination to exercise supplemental jurisdiction over, and dismissing, state law claims).

- 23 -

### A.    Relators Do Not Identify Any Specific False Claims.

To begin, a gaping hole in Relators' SAC is the identification of specific false claims. Courts have made clear that "[s]pecific dates, amounts, and contents of false claims or statements must be provided, as well as specific facts showing that a specific payment of money by the Government was conditioned on those claims or statements." *Lusby*, 2007 WL 4557773, at *5 (citing *U.S. ex rel. Clausen v. Laboratory Corp. of Am., Inc.,* 290 F.3d 1301, 1305 (11th Cir. 2002)). "Actual claims must be specifically identified because it is the claim for payment that is actionable under the Act, not the underlying fraudulent or improper conduct*." Lusby*, 2007 WL 4557773, at *5 (*citing* Clausen, 290 F.3d at 1311) ("The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Id.* at 1310.); *see also Hoffman*, 2013 WL 3421931, at *6.

Despite these stringent requirements, Relators do *not* identify any specific false claims. For example, Relators argue that the Hospital Defendants submitted inpatient claims for stays less than 24-hours in violation of Indiana Medicaid's Policy Manual. However, Relators do not to cite any particular claims that illustrate this actually happened. Instead, Relators rely on an IBM Watson whitepaper which broadly references claims constituting potential overpayments, without identifying any *specific* claims at issue. ECF 67-12. Moreover, the IBM Watson report does not include a single representative claim nor a description of the alleged falsity that would satisfy Rule 9(b)'s particularity requirement. Instead, it contains only tables that list provider identification numbers, provider names, the aggregate number of allegedly improper claims, and the total alleged overpayment received. *Id.*

Other types of false claims are similarly deficient. Relators rely on IBM Watson documents titled "Hospital Readmissions SFY 2020" and "Inappropriately Billed Hospital Readmission Claims" to support their allegations of improper inpatient billing for readmissions within 72 hours. *See* ECF 67-10; ECF 68-9. Setting aside the fact that there is nothing in either document which suggests any

amount of authenticity or reliability, the information also fails to meet the particularity requirement of FRCP 9(b) as explained by the Seventh Circuit. This data fails to allege any false claims "at the transactional level," and does not explain who submitted the claims, when the claims were submitted, what the content of the claims were, where the claims were submitted, or how they were submitted. *See Lanahan*, 41 F. 4th at 862 (7th Cir. 2022) (holding that to satisfy 9(b)'s particularity standard, relator must allege "specific facts demonstrating what occurred at the individualized transactional level").

The list goes on. For their allegations of false claims related to improper hospital transfers, Relators rely on a whitepaper from IBM Watson titled "Hospital Transfers SFY 2018." ECF 67-6. However, the IBM Watson report again fails to provide a single representative claim—simply containing a table listing provider identification numbers, provider names, the aggregate number of allegedly improper claims, and the total alleged payment received. *Id.* The same for claims for services after death, ECF 67-13, and duplicative injection claims, ECF 68-14.[15]

Typically, "to defeat dismissal [under Rule 9(b)'s particularity requirement,] 'specific representative examples' of false submissions are required." *U.S. ex rel. Sibley v. Univ. of Chi. Med. Ctr.*, 44 F.4th 646, 656 (7th Cir. 2022) (quoting *Mamalakis*, 20 F.4th at 302); *see also United States v. Addus HomeCare Corp.*, No. 13 CV 9059, 2017 WL 467673, at *10 (N.D. Ill. Feb. 3, 2017) (collecting cases); *Singer v. Progressive Care, SC*, 202 F. Supp. 3d 815, 826 (N.D. Ill. 2016). This is because under Rule 9(b), Relators must link specific allegations of fraud or deceit to claims for government payment. *See Suarez*, 2019 WL 4749967, at *10 (citing *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)). To do so, Relators "must allege the submission of a fraudulent claim." *Heritage Operations Grp., LLC*, 622 F. Supp. 3d at 689 (citing *Suarez*, 2019 WL 4749967, at *10; *Berkowitz*, 896 F.3d at 841. Put

---

[15] The IBM Watson report on "Duplicate Inpatient Claims SFY 2019," does the same for some of the Hospital Defendants. *See* ECF 67-15. Even for claims that that the report does detail, there is no clear indication that they are in fact duplicate claims, as they all contain a variety of differing data fields including different dates of services, dates of admission, and diagnoses—making it impossible to determine *which* claims are being identified as false, and why.

another way, Relators must identify the claims they believe violated the applicable laws, regulations, or policies that rendered defendants' express certifications of compliance false.

Without a single representative claim, or identification of any claims at the "transactional level," Relators cannot meet the heightened Rule 9(b) pleading standard. *Singer v. Progressive Care, SC,* 202 F. Supp. 3d 815, 825 (N.D. Ill. 2016) ("In the FCA context, the particularity requirement means that a relator must plead at least some actual examples of false claims."); *U.S. ex rel. Kalec, et al. v. NuWave Monitoring, LLC,* No. 12 C 69, 2016 WL 750155, at *5 (N.D. Ill. 2016) ("[T]o adequately allege an FCA violation, a plaintiff must allege the submission of a fraudulent claim."); *Heritage Operations Grp., LLC,* 622 F. Supp. 3d at 689 ("[Relators] cannot allege this link by merely describing fraudulent or unlawful activity. [They] must allege the submission of a fraudulent claim." (citing *Suarez,* 2019 WL 4749967, at *10)); *Berkowitz,* 896 F.3d at 841.

### B.    Relators Do Not Allege *Who* Was Involved Either.

In addition to the specific false claims at issue, Relators are required to discuss the "who" involved in the suit. *Lusby,* 2007 WL 4557773, at *5 (citations omitted). However, Relators do not name any individuals who submitted claims on behalf of the Hospital Defendants, signed certifications on behalf of the Hospital Defendants, made any statements that reflect the knowledge or subjective belief of the Hospital Defendants, or took any actions that would suggest knowledge, ignorance, or recklessness on behalf of the Hospital Defendants. Relators also hardly differentiate between the behavior and scienter of the different Hospital Defendants themselves, instead lumping them together.

Take for example Relators' allegations as to the scienter of various Defendants. At most, Relators sets forth the same allegation over and over: "the Hospital Defendants attended regular training sessions offered by Indiana Medicaid that emphasized the obligation of healthcare providers to refrain from submitting improper claims to Medicaid like billing for two separate hospital stays

despite immediate readmission, billing for in-patient care without 24-hour hospital admission, billing for services after death, and submitting duplicate claims for the same service." SAC ¶ 8. Relators say nothing more than "Hospital Defendants" writ large, but in doing so, fail to identify *who* from each of the Hospital Defendants attended these trainings—a grave omission given that each of the Hospital Defendants have thousands (and in some cases, tens of thousands) of employees. Relators also fail, in many instances, to specify which individual hospitals in which health systems submitted which claims. Moreover, even if Relators named individuals within each organization, the allegations fail to explain *which* training was attended, and when. Rule 9(b) requires more, and Plaintiffs have not overcome the heightened pleading requirement.

### C.     Relators Engage In Improper Group Pleading Against The Hospital Defendants Without Adequately Identifying Which Of Them Has Done What As Required By Rules 9(b) And 8.

Adding to the running list of deficiencies in the SAC, Relators use an improper "group pleading" approach, which is impermissible under Federal Rules of Civil Procedure 8(a)(2) *and* 9(b). As the Seventh Circuit has held, "[d]etails about *who* did what are not merely nice-to-have features of an otherwise-valid complaint; to pass must under Rule 8 of the Federal Rules of Civil Procedure, a claim to relief *must* include such particulars" and "complaints 'based on a theory of collective responsibility [should] be dismissed.'" *See Atkins v. Hasan*, No. 15 CV 203, 2015 WL 3862724, at *2 (N.D. Ill. June 22, 2015) (quoting *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)).

And, under the more rigorous Rule 9(b), a claimant must make specific and separate allegations against each defendant; "'[a] complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient.'" *Winforge, Inc. v. Coachmen Industries, Inc.*, No. 1:06-cv-619-SEB-JMS, 2007 WL 854025, at *5 (S.D. Ind. Mar. 13, 2007) (quoting *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)); *see also Zverev*, 244 F. Supp. 3d at 748 ("[T]he relator must adequately allege each defendant's role in the fraudulent scheme."); *United States v. Quest Diagnostics, Inc.*, No. 2:15-

CV-413-PPS-JEM, 2017 WL 770176, at *2 (N.D. Ind. Feb. 27, 2017) (dismissing FCA claim where relator "lumped together both defendants in this case and has not indicated which defendant, if any, falsified a report").

Despite the fact that the Seventh Circuit rejects group pleading under the Federal Rules, the SAC frequently uses the term "Defendants," without identifying which defendants took which alleged actions—a defect that itself requires dismissal. Though in some instances Relators call out individual defendants, more often, Relators group the "Hospital Defendants" together, implying knowledge, action, and culpability to the group at large. One need only look at the many allegations of "Hospital Defendants" attending training, without specific mention of any one Hospital Defendant, let alone specific individuals at each of the Hospital Defendants.

Where "the group allegations, combined with any individual allegations and reasonable inferences, fail to put a specific defendant on notice as to their alleged personal involvement in the injury, the Court must grant that defendant's motion to dismiss." *In re Crop Inputs Antitrust Litigation*, No. 4:21-md-02993 SEP, 2024 WL 4188654 (E.D. Mo. Sept. 13, 2024) (citing *Knight*, 725 F.3d at 818). In addition to the all of the others, this pleading deficiency merits dismissal as well.

*                    *                    *

The purpose of Rule 9(b) is clear. Relators must describe their claim in sufficient detail to give defendants fair notice of the grounds upon which the claim rests in addition to a mere statement of conclusions. *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). Indeed, "[t]he goal [of the Rule] is to protect a defendant's reputation from harm, minimize 'strike suits' and 'fishing expeditions,' and provide notice of the claim to the adverse party." *Heritage Ops. Grp., LLC*, 622 F. Supp. 3d at 686.

Where, as here, there are allegations of fraud, the Federal Rules require something more—the who, what, when, where, and how of that fraud. Relators' SAC, which fails to identify specific false

- 28 -

claims, individuals involved, and the specifics as to *each* of the Hospital Defendants, does not survive under this standard.

## IV.    The Constitutionality of the FCA's *Qui Tam* Provision Remains In Question.

The Hospital Defendants also note that as recently as September, a federal district court held that the *qui tam* provision of the FCA is unconstitutional and dismissed the underlying *qui tam* suit because the relator lacked standing under the FCA. *See U.S. ex rel. Zafirov v. Florida Medical Associates, LLC,* No. 8:19-CV-01236-KKM-SFP, 2024 WL 4349242 (M.D. Fla. Sept. 30, 2024) ("An FCA relator's authority markedly deviates from the constitutional norm. The provision permits anyone— wherever situated, however motivated, and however financed—to perform a 'traditional, exclusive [state] function' by appointing themselves as the federal government's 'avatar in litigation.' *Yates v. Pinellas Hematology & Oncology, P.A.,* 21 F.4th 1288, 1310 (11th Cir. 2021). That arrangement directly defies the Appointments Clause by permitting unaccountable, unsworn, private actors to exercise core executive power with substantial consequences to members of the public . . . . [M]y conclusion that an FCA relator is an officer of the United States is neither novel nor surprising.") (citing *U.S. ex rel. Polansky v. Exec. Health Resources, Inc.,* 599 U.S. 419, 442 (Kavanaugh, J., concurring, joined by Barrett, J.) (urging the Court to consider in an appropriate case the "substantial arguments" that *qui tam* is inconsistent with Article II); *Polansky,* 599 U.S. at 449 (Thomas, J., dissenting) (same) (remaining citations omitted)). While *Zafirov* is not binding on this Court, the Hospital Defendants reserve the right to challenge Relators' standing on this basis should the Seventh Circuit or Supreme Court so rule.

## V.    The SAC Should Be Dismissed With Prejudice.

The SAC represents Relators' *third* attempt to plead a claim. Yet, Relators are no closer to setting forth allegations sufficient to support a violation of the FCA or IFCA. Dismissal with prejudice is appropriate if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of

her claim which would entitle her to relief." *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001); *A.I. Credit Corp. v. Hartford Computer Grp., Inc.*, 847 F. Supp. 588, 596 (N.D. Ill. 1994) (citing *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992)).

The SAC is riddled with fatal deficiencies. Relators cannot amend the SAC to overcome the public disclosure bar or plead a claim upon which relief can be granted. And, given that Relators have had several opportunities to amend their pleading and it still lacks the requisite particularity under Rule 9(b), amendment is certainly futile on that front as well.

Consequently, the SAC should be dismissed *with prejudice*.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Second Amended Complaint *with prejudice*.

Dated: December 6, 2024                     Respectfully submitted,

                                            BARNES & THORNBURG LLP

                                            *s/ Josh J. Minkler*
                                            Joshua J. Minkler
                                            Kathleen L. Matsoukas
                                            Kristin L. Froehle
                                            Amanda Jane Gallagher
                                            BARNES & THORNBURG LLP
                                            11 South Meridian Street
                                            Indianapolis, Indiana 46204
                                            *Attorneys for Defendants Indiana University Health, Inc., Parkview Health System, Inc., and the Health and Hospital Corporation of Marion County*

                                            *s/  John E. Kelly*
                                            John E. Kelly (admitted pro hac vice)
                                            Jacquelyn E. Papish (admitted pro hac vice)
                                            BARNES & THORNBURG LLP
                                            555 12th Street, N.W., Suite 1200
                                            Washington, D.C. 20004

*Attorneys for Defendants Ascension Health, Lutheran Health Network of Indiana, LLC, and Community Health Network, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was electronically filed on this 6th day of December, 2024 and served on all counsel of record by the Court's electronic filing system.

I further certify that this Brief, together with the related pleading cited herein, has been served via certified mail the Attorney General of the United States (as required by Rule 5.1(a)(2)) at:

> Jolene Ann Lauria
> Assistant Attorney General for Administration[16]
> United States Department of Justice
> Justice Management Division
> 950 Pennsylvania Avenue NW
> Room 1111
> Washington, DC

*s/ Amanda Jane Gallagher*

Amanda Jane Gallagher

---

[16] The Assistant Attorney General for Administration is designated to accept service on the Attorney General's behalf. *See* 28 C.F.R. § 0.77(j).