UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the<br>STATE OF INDIANA,<br><br>   Plaintiffs,<br><br>      v.<br><br>ANTHEM INSURANCE COMPANIES, INC.,<br>*et al.*<br><br>   Defendants.<br><br>_____<br><br>JOHN D. MCCULLOUGH and<br>JAMES R. HOLDEN,<br><br>   Relators. | Cause No. 1:21-cv-00325-JMS-TAB<br><br>**UNDER SEAL** |

**STATE OF INDIANA'S STATEMENT OF INTEREST IN RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS**

The State of Indiana, through undersigned counsel, files this Statement of Interest to address certain arguments raised by the MCE Defendants and the Hospital Defendants in their briefing regarding their respective Motions to Dismiss the Relators' Second Amended Complaint.[1] Relators' Second Amended Complaint includes a cause of action on the State's behalf under the Indiana Medicaid False Claims and Whistleblower Protection Act, Ind. Code §§ 5-11-5.7-1, *et seq.* (the "IMFCA"). The State presents this Statement for the limited purpose of informing the Court as to the State's position on the interpretation and constitutionality of the Indiana Medicaid False Claims and Whistleblower Protection Act, Ind. Code §§ 5-11-5.7-1, *et seq.* (the "IMFCA").

---

[1] See Dkt Nos. 172, 173, 175, 176, 190, and 191.

I.     THE IBM WATSON REPORTS ARE NOT RELEVANT TO THE MATERIALITY INQUIRY.

Defendants argue that the perceived lack of action by the State on the information contained in reports prepared by IBM Watson (the "IBM Watson Reports," attached to Relators' Second Amended Complaint [Dkt. 67] as Exhibit Nos. 1-27 thereto) suggests that the frauds alleged therein were not material to the State. [Dkt. 173 at 7]; [Dkt. 176 at 18-19]. Relators contend that other factors, particularly alleged political interference, account for this perceived lack of action. [Dkt. 185 at 25]. Both parties presume knowledge to which none of them would have been privy- what, if any, investigation or other action the State undertook with regard to the allegations detailed in the IBM Watson Reports.

More importantly, however, both sides missed the point of the inquiry. The question is not, as the MCE Defendants assert, "whether the government considered IBM Watson's algorithmic and 'possible' findings to be material to payment" [Dkt. 190 at 2], because the IBM Watson Reports are not the "false record or statement" at issue. 31 U.S.C. § 3729(a) (1) (B), (a) (1) (G); I.C. § 5-11-5.7-2(a) (2); *U.S. ex rel. Marshall v. Woodward, Inc.*, 812 F.3d 556, 563 (7th Cir. 2015) ("Furthermore, our case law focuses on whether the false statement itself, rather than the certificate or document containing that statement, is capable of influencing the government's decision."). The records or statements at issue in this case are the claims for reimbursement submitted by Defendants, or which Defendants caused to be submitted to Indiana Medicaid, and the provider records maintained to support those claims.

The IBM Watson Reports contain detailed information and analysis suggesting that it was *possible* that such claims were submitted to Indiana Medicaid containing false records or statements, but the relevant inquiry is whether the State would have paid the claims if it had possessed *actual* knowledge that false records or statements were *actually* submitted. *Id.*

2

("Hence, the appropriate inquiry is whether Woodward's allegedly false statements-that the Grade A joint meets its quality standards-are capable of influencing the government's decision.") (citing *U.S. ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 828 (7th Cir. 2011); *U.S. v. Rogan*, 5174 F.3d 449, 452 (7th Cir. 2008)). *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 194-95 (2016) ("Or, if the Government regularly pays a particular type of claim in full despite *actual* knowledge that certain requirements *were* violated, and has signaled no change in position, that is strong evidence that the requirements are not material") (emphasis added); *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 113 (2d Cir. 2021).

Expanding materiality analysis to encompass reports of possible or suspected fraud, as Defendants suggest, is an invitation for the court to impermissibly assess the veracity and credibility of evidence when ruling upon a motion to dismiss. *Kilborn v. Amiridis*, 131 F.4th 550, 562 (7th Cir. 2025) ("At this stage, we accept the well-pleaded facts in the complaint as true and draw reasonable inferences in Kilborn's favor.") (citing *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024)).

Much like the Government's decision of whether to intervene in a *qui tam*, the State's decision of whether and how to act upon reports that may or may not indicate the existence of an actual fraud may be based on a number of factors. *U.S. v. Molina Healthcare of Illinois, Inc.*, 17 F.4th 732, 744 (7th Cir. 2021) ("Many things could explain the government's continued contracting with Molina. It may have expected to purge the underserved NF enrollees from the books; it may have needed time to work out a way not to prejudice Medicaid recipients who had nothing to do with this problem."); *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 455 (5th Cir. 2005) ("While the government could have opted to intervene and amend, it is not the court's duty to speculate as to the costs and benefits associated with such a strategy." )

(citing *United States ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.,* 104 F.3d 1453, 1458 (4th Cir.1997)).

II.    THE IBM WATSON REPORTS ARE PUBLIC RECORDS UNDER STATE LAW.

Relators assert that the IMFCA public disclosure bar does not apply to their claims because the IBM Watson Reports are not "public," as that term is used in I.C. § 5-11-5.7-7(e)(2).[2] [Dkt. 36-37]. Relators reach this conclusion by opining that the Indiana Supreme Court would or may elect to follow the example of federal court's other than the 7th Circuit, which holds that information in the possession of "the appropriate entity responsible for investigating" the alleged fraud is subject to the federal FCA's public disclosure bar. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 914 (2009).

A recent decision by the Indiana Court of Appeals suggests otherwise, however. In *State ex rel. Holden v. Ice Miller*, *LLC*, that court gave its first impression of the public disclosure bar of another corollary state statute, the Indiana False Claims and Whistleblower Protection Act (I.C. § 5-11-5.5-1, *et seq.*, the "IFCA").[3] At issue in the case was whether records obtained by the Relator through an Access to Public Records Act (I.C. §5-14-3-1, *et seq.*, "APRA") request were "a legislative, administrative or another public report, hearing, audit or investigation" subject to the IFCA's public disclosure bar.[4] The court began by looking to federal courts for guidance and

---

[2] "(e) A court does not have jurisdiction over an action or claim brought under section 4 of this chapter if the action or claim is based upon information contained in:…(2) a legislative, an administrative, or another public report, hearing, audit, or investigation…unless the person bringing the action either, before a public disclosure under this section voluntarily discloses to the state the information on which the allegations or transactions in a claim are based, or has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and the person bringing the action has voluntarily provided this information to the state before an action is filed under section 4 of this chapter." I.C. § 5-11-5.7-7(e).
[3] I.C. § 5-11-5.5-1, *et seq.*, the "IFCA." The IFCA is another corollary to the federal False Claims Act for utilization in non-Medicaid related cases.
[4] I.C. § 5-11-5.5-7(f) is very similar to the IMFCA public disclosure bar: "A court does not have jurisdiction over an action brought under section 4 of this chapter if the action is based upon information contained in:…(2) a legislative, an administrative, or another public report, hearing, audit, or investigation…unless the person bringing the action has direct and independent knowledge of the information that is the basis of the action, and the person bringing the action has voluntarily provided this information to the state."

4

found that an agency's written response to an APRA request falls within the ordinary meaning of the word 'report,' emphasizing that "[a]nyone could have filed those requests and then filed the same suit." 211 N.E.3d 14, 20-21 (2023) (citing *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, (2011)).

> APRA provides an expansive definition of public records:
>
> (r) "Public record" means any writing, paper, report, study, map, photograph, book, card, tape recording, or other material that is created, received, retained, maintained, or filed by or with a public agency and which is generated on paper, paper substitutes, photographic media, chemically based media, magnetic or machine readable media, electronically stored data, or any other material, regardless of form or characteristics.

I.C. § 5-14-3-2(r). All such public records are subject to requests for public access[5] with 14 narrowly described mandatory exceptions that are not applicable to the IBM Watson Reports[6] and 28 exceptions that may be exercised at the State agency's discretion,[7] the most directly applicable being "intra-agency or interagency advisory or deliberative material." Because the information contained in the report are public records subject to an APRA request, even at the discretion of the State, they would appear to fall within the reasoning of *Holden*.

III.   THE CONSTITUTIONAL CHALLENGES TO THE FEDERAL FCA DO NOT AFFECT THE STATE LAW CLAIMS OR THIS COURT'S JURISDICTION.[8]

The MCE Defendants allege that "the False Claims Act's *qui tam* provisions…violate multiple provisions of the Constitution–the Vesting Clause, the Take Care Clause, and the

---

[5] I.C. § 5-14-3-3.
[6] I.C. § 5-14-3-4(a).
[7] I.C. § 5-14-3-4(b).
[8] Even though the constitutional arguments raised by Defendants do not impact the State of Indiana's claims in this matter, the State of Indiana is constantly working with the U.S. in joint efforts to identify and reduce fraud in the Medicaid program and maintains an interest in the federal FCA. It is telling that it is the executive, whose authority is allegedly infringed upon by Relators' presence, defending this statute. That is because *qui tam* statutes are an invaluable tool, allowing the executive to multiply its investigatory and litigation resources while retaining extensive authority to rein in Relators where their actions do not serve the government's interest. *U.S. ex rel. Marcus v. Hess*, 317 U.S. 537, 542, (1943) ("[O]ne of the least expensive and most effective means of preventing frauds on the treasury is to make the perpetrators of them liable to actions by private persons acting, if you please, under the

Appointments Clause" [Dkt. 174] and refer to "[t]he FCA's *qui tam* mechanism" and "the FCA's *qui tam* provisions" [Dkt. 173 at 29], but do not clearly state whether they are challenging the federal or state False Claims Act or whether their challenge was based upon the federal or state Constitutions.[9] As they offer only citations to the US constitution and federal case law interpreting that document but not the Indiana constitution, it must be presumed that their challenge is to the federal FCA, only.

    **A.**    **<u>The Court Should Not Address the Constitutional Challenge If Other Issues Would Be Dispositive.</u>**

Where both constitutional and non-constitutional issues are raised, the court should consider and, if it can be fairly done, dispose of the case on non-constitutional grounds prior to considering any constitutional questions. *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) ("[i]t is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case…") (*quoting Escambia County v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam)). Such a course "accords with [the court's] general obligation to refrain from unnecessary forays into constitutional law." *Sapp v. Foxx*, 106 F.4th 660, 665 (7th Cir. 2024), cert. denied, No. 24-379, 2024 WL 4655013 (U.S. Nov. 4, 2024) (citing *Jean v. Nelson*, 472 U.S. 288, 341(1936) (J. Brandeis, concurring)).

---

strong stimulus of personal ill will or the hope of gain."); Brief of Sen. Grassley as Amicus Curiae in Support of Appellants, p. 24-31, *U.S. ex rel. Zafirov v. Florida Med. Assoc., LLC*, No. 8:19-cv-01236 (11th Cir.) (https://www.grassley.senate.gov/imo/media/doc/fca_amicus_brief.pdf).

[9] The Hospital Defendants "reserve the right to challenge Relators' standing" on the constitutionality of the FCA, again not explicitly stating whether that challenge would be to the federal FCA or the IMFCA but citing only the recent *Zafirov* decision from the US District Court for the Middle District of Florida, which had no bearing on the IMFCA. [Dkt. 176 at 37].

B. **Even If the Constitutional Challenge Must Be Addressed and the *Qui Tam* Provisions of the Federal FCA Found Unconstitutional, the Court Would Retain Jurisdiction Over the State Law Claims.**

Even if the federal FCA claims were to be dismissed, the Court would maintain original jurisdiction of the remaining state law claims if they "necessarily raise[s]" a 'substantial' and 'actually disputed' federal question." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 26, (2025) (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). As noted by each of the parties, Medicaid is a joint state-federal program, subject to regulatory requirements from both state and federal agencies, any number of which are implicated by the claims alleged in Relators' Second Amended Complaint. E.g., 42 C.F.R. § 455A (setting forth Medicaid Agency Fraud Detection and Investigation Program requirements for State Medicaid plans).

Respectfully submitted,

STATE OF INDIANA
THEODORE E. ROKITA
Attorney General
Attorney No. 18857-49


By: */s/ Jeremy L. Johnson*

Jeremy L. Johnson
Attorney No. 28989-53
Lawrence J. Carcare II
Attorney No. 18557-49

Deputy Attorney General
Office of the Indiana Attorney General
Medicaid Fraud Control Unit
8720 Castle Creek Parkway, Suite 250
Indianapolis, IN 46250
(317) 941-4339
Jeremy.Johnson@atg.in.gov
Counsel for State of Indiana

## CERTIFICATE OF SERVICE

I certify that on April 22, 2025, I electronically filed the foregoing State of Indiana's Statement of Interest in Response to Defendants' Motions to Dismiss using the CM/ECF system, which sent notification of such filing to all counsel of record.

By: */s/ Jeremy L. Johnson*