**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. John D. McCullough and James R. Holden, THE STATE OF INDIANA ex rel. John D. McCullough and James R. Holden, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 1:21-cv-00325-TWP-TAB |
| ANTHEM INSURANCE COMPANIES, INC., MDWISE, INC., CARESOURCE INDIANA, INC., COORDINATED CARE CORPORATION, INDIANA UNIVERSITY HEALTH, INC., HEALTH AND HOSPITAL CORPORTION OF MARION COUNTY, COMMUNITY HEALTH NETWORK, INC., ASCENSION HEALTH, INC., LUTHERAN HEALTH NETWORK, INC., PARKVIEW HEALTH SYSTEM, INC., | ) | |
| Defendants. | ) | |
| JOHN D. MCCULLOUGH, JAMES R. HOLDEN, | ) | |
| Relators. | ) | |

**ORDER DENYING MOTIONS TO DISMISS THIRD AMENDED COMPLAINT**

This matter is before the Court on two Motions to Dismiss the Third Amended Complaint: one filed by Defendants Anthem Insurance Companies, Inc., MDwise, Inc., Caresource Indiana, Inc., and Coordinated Care Corporation (collectively, the "MCE Defendants") (Filing No. 218); and one filed by Defendants Indiana University Health, Inc., Health and Hospital Corporation of Marion County, Community Health Network, Inc., Ascension Health, Inc., Lutheran Health Network, Inc., and Parkview Health System, Inc. (collectively, the "Hospital Defendants") (Filing

No. 221). This *qui tam* action was initiated by Plaintiff-Relators John D. McCullough ("McCullough") and James R. Holden ("Holden") (together, the "Relators") alleging the following violations of the federal False Claims Act, 31 U.S.C. § 3729, and the Indiana False Claims Act, Ind. Code §§ 5-11-5.7-1–18: Count I: Presentation Of False Or Fraudulent Claims in violation of 31 U.S.C. § 3729(a)(1)(A); Count II: Making And Using False Statements in violation of 31 U.S.C. § 3729(a)(1)(B); Count III: Presenting False Or Fraudulent Claims in violation of Ind. Code § 5-11-5.7-2(b)(1); and Count IV: Making And Using False Statements in violation of Ind. Code § 5-11-5.7-2(b)(2) (Filing No. 209). For the reasons explained in this Order, both Motions are **denied**.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Third Amended Complaint and draws all inferences in favor of the Relators as the non-moving party. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). These facts are not an all-encompassing recitation of all the facts in this case, instead, the Court recites only those facts relevant to the instant Motions.

The Relators, McCullough and Holden, are United States citizens who reside in Boone County, Indiana (Filing No. 209 at 13). From 2001 until 2017, McCullough was an employee of the State of Indiana, including serving as the Director of Provider Relations for Indiana Medicaid from 2008 to 2013 and as the Director of Program Integrity for Indiana Medicaid from September 2014 to March 31, 2017. *Id.* From 1999 to 2014, Holden was an employee of the State of Indiana, including serving as the Chief Deputy and General Counsel in the Office of the Indiana State Treasurer from January 2007 to June 2011 and again from November 2012 to November 2014. *Id.*

The MCE Defendants are all managed care entities ("MCEs") doing business in Indiana. Anthem Insurance Companies, Inc., is a publicly traded for-profit Indiana corporation

headquartered in Indianapolis, Indiana. *Id.* at 14. MDwise, Inc. is an Indiana non-profit corporation headquartered in Indianapolis. *Id.* CareSource Indiana, Inc., is an Indiana non-profit corporation headquartered in Indianapolis. *Id.* Coordinated Care Corporation is a for-profit Indiana corporation headquartered in Indianapolis. *Id.*

The Hospital Defendants are all hospital networks doing business in Indiana. Indiana University Health, Inc., is an Indiana non-profit corporation headquartered in Indianapolis that operates facilities throughout Indiana. *Id.* Ascension Health, Inc., is a Missouri non-profit corporation headquartered in St. Louis, Missouri, and operates multiple facilities throughout Indiana. *Id.* at 14–15. Community Health Network, Inc., is an Indiana non-profit corporation headquartered in Indianapolis, operating acute care and specialty hospitals, immediate care centers, ambulatory care centers, and surgery centers throughout Indiana, including the Sidney and Lois Eskenazi Hospital in Indianapolis. *Id.* at 15 Lutheran Health Network, Inc., is an Indiana for-profit corporation headquartered in Fort Wayne, Indiana, operating multiple hospitals in Fort Wayne. *Id.* at 16. Parkview Health System, Inc., is an Indiana for-profit corporation headquartered in Fort Wayne that operates two hospitals in Fort Wayne. *Id.*

Between 2011 and 2021, IBM Watson and its corporate predecessors ("IBM") served as the fraud and abuse detection system contractor for Indiana Medicaid in accordance with federal Medicaid requirements. *Id.* Pursuant to its contract with Indiana Medicaid, IBM agreed to perform fraud and abuse detection and overpayment recovery services, including fraud and abuse detection, overpayment recovery, pre-payment review, and provider education. *Id.* To carry out these responsibilities, IBM developed, refined, and implemented a series of sophisticated computer algorithms to detect fraud, abuse, and overpayments. *Id.* Based on its fraud detection algorithms, IBM helped Indiana Medicaid uncover and recoup millions of dollars each year in overpayments

relating to fee-for-service Medicaid claims between 2011 and 2016. *Id.* at 16–17. In a typical case, once IBM's analysis identified overpayments, the Program Integrity staff at Indiana Medicaid would review the findings with IBM, and if the staff agreed, they would issue letters to Medicaid providers to recoup the overpayments. *Id.* at 17. In 2016, for example, IBM's algorithms led to more than $8.9 million in such recoveries. *Id.* IBM's ongoing refinement of its algorithms ensured their accuracy in identifying improper Medicaid payments. *Id.* Between 2011 and 2020, less than one percent of Indiana Medicaid's recoupment demands based on IBM's analysis were overturned on appeal. *Id.* The findings of IBM's algorithmic audits were provided directly to Indiana Medicaid's Program Integrity team and were therefore not publicly available. *Id.*

In 2016, in response to an audit by the Centers for Medicare and Medicaid Services ("CMS"), Indiana Medicaid's Program Integrity team directed IBM to expand the scope of its fraud detection algorithm reports beyond traditional fee-for-service Medicaid claims to include claims that providers submitted to MCEs. This inclusion of Medicaid MCE payments represented a major expansion of the scope of IBM's fraud detection data analysis. As a result, the numbers of improper claims identified by IBM were expected to be multiple times higher than what IBM had found when its analysis focused just on fee-for-service claims. *Id.*

The Program Integrity team at Indiana Medicaid had just four staff members when McCullough became the director in 2014. In his discussions with CMS and other state Medicaid officials, McCullough was advised that the Program Integrity team would need significantly more staffing—at least a dozen more staff members—to handle the administrative tasks associated with pursuing recoveries based on IBM's findings concerning improper MCE claims. McCullough requested the authority to add multiple staff to the Program Integrity team, but he was only able to hire one staff member before he was terminated in early 2017. After his departure, the Program

Integrity team did not hire more staff and continued to have just four or five staff members throughout the relevant time. *Id.* at 18.

When IBM submitted reports to the Indiana Medicaid Program Integrity team to summarize its findings, the Program Integrity staff repeatedly told IBM that they had not been able to fully review and analyze the findings previously presented in the IBM reports, let alone the new reports. *Id.* Renee Gallagher, McCullough's replacement as Program Integrity director, also had gaps in her understanding of IBM's algorithmic analysis. *Id.* at 18–19.

As a result of the combination of issues, the Program Integrity team curtailed its earlier plans to utilize IBM's data analysis and findings to recoup improper Medicaid overpayments. This approach, however, was not due to concerns about the accuracy or reliability of IBM's analysis and findings. The decision not to recoup overpayments identified by IBM also did not reflect a change in law or a formal policy decision by Indiana Medicaid that would have resulted in the MCE Defendants or Hospital Defendants believing that they were released from their obligations to avoid, detect, prevent, or rectify overpayments by Medicaid. *Id.* at 20.

For a period of several years, Indiana Medicaid's Program Integrity efforts waned following the directive to pause pursuing overpayment recoveries based on IBM's analysis. In 2019, for example, Medicaid fraud recoveries had fallen to just $7.24 million from $12.84 million in 2016. *Id.* at ¶ 46. However, Indiana Medicaid has since reinvigorated its fraud detection efforts, including reintroducing data analysis algorithms targeting the same type of billing violations that IBM targeted in several of the reports at issue, and obtained recoveries comparable to those in 2016. *Id.*

The Medicaid program was established in 1965 as a joint federal and state program to provide financial assistance to individuals with low income to enable them to receive medical care. Under Medicaid, each state establishes its own eligibility standards, benefit packages, payment

rates, and program administration rules in accordance with certain federal statutory and regulatory requirements. Under the managed care model, which is the model relevant to this case, the state contracts with private health plans such as the MCE Defendants to administer its Medicaid program. The money the state receives for Medicaid is based on the state's per capita income compared to the national average. The federal government then pays to the state the statutorily established share of the total amount expended as medical assistance under the state plan. *Id.* at 24.

In Indiana, providers such as the Hospital Defendants submit claims for payment to the MCE Defendants for services provided to Medicaid beneficiaries enrolled in the managed care plan. In their agreements with providers, the MCE Defendants require the providers to comply with the rules and regulations of the Medicaid program and with their own plan requirements. Further, in Indiana, Medicaid providers must affirmatively certify, as a condition of payment of the claims submitted for reimbursement from Medicaid, compliance with applicable federal and state laws and regulations as well as Indiana Medicaid policies. *Id.* at 24–26.

As with all Medicaid providers, the Program Integrity team at Indiana Medicaid would publish bulletins, banner pages, and hold annual meetings to ensure compliance with Medicaid billing requirements. Between fall 2016 and early 2018, the Indiana Medicaid Program Integrity team held monthly meetings with all the MCE Defendants to discuss common improper billing scenarios and how they could detect, prevent, and recoup improper Medicaid payments resulting from those scenarios. *Id.* at 35.

From 2017 to 2021, IBM conducted analyses identifying various overpayments of claims by the MCE Defendants. The report found that the MCE defendants likely misused between tens and hundreds of millions of dollars of Medicaid funds to pay claims that (1) violated basic hospital

billing rules such as those disallowing two separate in-patient claims when the patient is readmitted right away for the same condition, (2) were clearly not payable because they were for services after patients' deaths or were duplicative of already-paid claims, and (3) contravened Medicaid billing requirements for chiropractic, dental, and opioid treatments. The MCE Defendants likely misused Medicaid funds to pay these improper claims, instead of fulfilling their obligation to detect and prevent such improper payments, because they knew reporting higher expenditures in the encounter data they submitted to Indiana Medicaid would allow them to obtain higher capitated payments in subsequent years. *Id.* at 32–40.

From 2017 to 2021, IBM also conducted analyses identifying various overpayments to the Hospital Defendants. The report found that the Hospital Defendants, like the MCE Defendants, likely obtained millions of dollars in Medicaid funds by submitting claims that (1) violated basic hospital billing rules, (2) were clearly not payable, and (3) contravened Medicaid billing requirements for injection claims. *Id.* at 57–66.

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above

the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation modified). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

To adequately allege a violation of the False Claims Act, Relators must plead that: (1) the defendant made a false claim for payment to the Government; (2) the defendant had knowledge of the claim's falsity, also commonly known as "scienter"; (3) the claim was material to the Government's decision to pay the claim; and (4) the claim resulted in payment by the Government. *United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 740 (7th Cir. 2021) (citing *U.S. ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017)). Federal Rule of Civil Procedure 9(b) "requires specificity, but it does not insist that a plaintiff literally prove his case in the complaint." *Id.* at 741. "Relators with a legitimate basis for bringing False Claims Act cases will not generally have propriet[ar]y information of the company they are trying to sue, and so courts do not demand voluminous documentation substantiating fraud at the pleading stage. All that is necessary are sufficiently detailed allegations." *Id.* at 740–41 (emphases omitted).

The Hospital Defendants argue that the Third Amended Complaint fails to properly plead under Rule 12(b)(6) the elements of falsity, scienter, materiality, and causation, which are the essential elements of Relators' claims under the False Claims Act; and the Third Amended Complaint fails to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) (Filing No. 221 at 1–2). The MCE Defendants seek dismissal for the same reasons and add that the Third Amended Complaint is barred by prior public disclosure and that the False Claims Act's *qui tam* mechanism is unconstitutional (Filing No. 218 at 1–2).

Relators argue that the new allegations in their Third Amended Complaint preclude dismissal because they show that (1) Indiana Medicaid did not have "actual knowledge" of the billing violations at issue, or at least raise factual disputes that cannot be resolved at the pleadings stage; and (2) even if there were "actual knowledge," Indiana Medicaid "has signaled [a] change in position" that alters the materiality analysis as contemplated by the Supreme Court's decision in *Universal Health Services, Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176 (2016) (Filing No. 227 at 7).

The Court will first address the elements of falsity, scienter, and causation, the public disclosure doctrine, and the constitutionality of *qui tam* actions, before addressing the materiality of the Medicaid billing violations at issue.

## A. <u>Falsity, Scienter, and Causation; Public Disclosure Doctrine; and Constitutionality</u>

The Court previously found the allegations contained in the Second Amended Complaint to be sufficient to state a claim for the elements of falsity, scienter, and causation (*see* Filing No. 205). Given that the Third Amended Complaint largely asserts the same allegations concerning these elements, the Court sees no reason to depart from its previous determination. Thus, the Court finds that the elements of falsity, scienter, and causation remain satisfied, and notes the Defendants' preservation of their arguments to the contrary (Filing No. 219 at 7; Filing No. 222 at 12 n.3).

Likewise, the Court previously found that the public disclosure bar of the Indiana False Claims Act was inapplicable to the Relators' claims in the Second Amended Complaint, despite Seventh Circuit precedent that "the Government's possession of the information exposing a fraud is alone sufficient to trigger the public-disclosure bar," *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 275 (7th Cir. 2016) (*see* Filing No. 205 at 11–13). The Seventh Circuit later indicated that it needed to reconsider this precedent for subsequent cases addressing the issues here. *Cause of Action*, 815 F.3d at 277. This Court remains persuaded that the Indiana Supreme Court would follow the majority view of the federal circuit courts and thus finds that the public disclosure bar is inapplicable to the Relators' claims in the Third Amended Complaint.

The Court also previously rejected the arguments asserted by the MCE Defendants and Hospital Defendants that *qui tam* actions are unconstitutional (Filing No. 205 at 33). It remains this Court's position that absent binding authority, it agrees with the many district courts in the Seventh Circuit and the many Circuit Courts that have upheld *qui tam* actions. Dismissal of the Third Amended Complaint is not warranted on this basis.

**B. Materiality**

This Court found that materiality was not satisfied in Relators' Second Amended Complaint because their assertions that Indiana Medicaid began curtailing recoupments based on improper political pressure indicated a conscious choice to no longer emphasize correct payments of claims, thus undermining Relators' arguments for materiality. *Id.* at 21. The Court found that Indiana Medicaid's decision to allow the alleged overpayments to go unpursued is further evidence that the Government is not concerned with the alleged violations, and that Relators had failed to provide an alternative reason that could explain Indiana Medicaid's payment of the claims. *Id.* at 20.

The Court rejected Relators' arguments concerning Indiana Medicaid's prior recoupment efforts, finding that this too indicated a conscious decision to reduce compliance efforts and proper payment safeguards by Indiana Medicaid. The Court noted the United States Supreme Court's holding in *Escobar* that payment of claims by the Government despite actual knowledge of billing violations is very strong evidence that those violations are not material. 579 U.S. at 195.

Having determined that the allegations in the Second Amended Complaint were insufficient to state a claim for relief due to their inability to plead materiality, the Court afforded the Relators a final attempt to do so. The Relators filed the operative Third Amended Complaint. The dispositive question before the Court is whether the Relators' Third Amended Complaint sufficiently pleads materiality such that it may survive the initial hurdle of a motion to dismiss. The Court finds that it does.

"A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Escobar*, 579 U.S. at 181. However, "statutory, regulatory, and contractual requirements are not automatically material, even if they are labeled conditions of payment." *Id.* at 191. "Materiality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Id.* at 193 (citation modified).

> In sum, when evaluating materiality under the False Claims Act, the [g]overnment's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive. Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the [g]overnment pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material.

*Id.* at 194. For the Third Amended Complaint to survive the Motions to Dismiss, it must "include specific allegations that show that the omission in context significantly affected the government's actions." *Molina*, 17 F.4th at 743.

The Third Amended Complaint alleges that Indiana Medicaid had only four to five staff members during the relevant time, causing the inability to fully review and analyze, let alone take steps to pursue recoveries based on, the findings in the IBM reports (Filing No. 209 at 18). "For example, the Indiana Medicaid Program Integrity team advised IBM in 2018 to pause weekly meetings because more time was needed for internal discussions within the Program Integrity team about program orientation and interactions with MCEs." *Id.*

Relators allege that Renee Gallagher, McCullough's replacement as Program Integrity Director at Indiana Medicaid, had significant gaps in her understanding of IBM's algorithmic analysis. As a result of the combination of all these issues, the Program Integrity team failed to recognize the alleged false claims and incorrectly curtailed the use of IBM's data analysis and findings to recoup improper Medicaid overpayments from the MCE Defendants and the Hospital Defendants. *Id.* at 19.

Defendants argue that these allegations fail to plead materiality. Specifically, they contend the Relators have failed to provide the Court with an alternative explanation as to why Indiana Medicaid paid the alleged false claims despite actual knowledge. Defendants contend the Relators are attempting to backtrack prior statements by now claiming that Indiana Medicaid did not have actual knowledge because it was understaffed and the director could not understand the IBM reports. They contend that such new allegations are belied by other allegations contained in the Third Amended Complaint: that in the typical case, the Program Integrity staff would review the findings with IBM; IBM sent over 1,000 audit letters annually and recouped millions of dollars

annually from 2011 to 2020; and that Indiana Medicaid made the incorrect decision not to recoup overpayments (Filing No. 219 at 8–9; Filing No. 222 at 15–16).

Defendants also contend these new allegations are sheer speculation and, even if true, do not overcome the very strong evidence that Indiana Medicaid had the reports, was aware of the alleged falsities underlying the claims at issue in this case, and opted not to act. Defendants argue the Relators' inclusion of an Indiana Medicaid official's statement that Indiana Medicaid is aware of the *qui tam* action and would pursue the alleged false claims if the Court confirmed that the claims are not legally entitled to payment, does not support materiality. Instead it shows that Indiana Medicaid does not find the violations material and will only pursue recoupment of such payments if the Court tells it to (Filing No. 222 at 17; Filing No. 219 at 14).

In response, Relators assert that Indiana Medicaid's lack of staffing and Renee Gallagher's lack of understanding of the IBM reports show that Indiana Medicaid did not make a conscious choice to ignore the reports but instead failed to utilize or appreciate the reports (Filing No. 227 at 28). Relators point out their allegations that Program Integrity staff repeatedly told IBM that they had not been able to fully review and analyze the IBM reports. Relators argue these issues—rather than conscious indifference to the findings of the IBM reports—caused Indiana Medicaid to pause its overpayment recovery efforts. *Id.* Relators assert that the Seventh Circuit has emphasized that it is not appropriate to impute "actual knowledge" to government agencies when individual officials "who make the decision . . . fail to appreciate the significance" of the information they are given, or even if they "'are negligent,' 'gullible,' or 'careless'" in not doing so. *Id.* (quoting *United States ex rel. Streck v. Eli Lilly*, 152 F.4th 816 (7th Cir. 2025); *United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008)). Relators assert that the MCE Defendants and Hospital Defendants

essentially ask the Court to infer Indiana Medicaid's actual knowledge based on its simple possession of the IBM reports, which is improper at this stage of the litigation.

To the extent the MCE Defendants and Hospital Defendants ask the Court to ignore Relators' new allegations and instead focus on their prior pleadings, Relators assert that this contravenes the pleading standard. *Id.* at 23. Relators contend that in any event, their new allegations do not contradict their prior pleadings.

Relators cite to *Escobar*, where the United States Supreme Court explained that even "if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated," such payments may not be probative of materiality if the government subsequently "signaled [a] change in position." *Id.* at 24 (quoting *Escobar*, 579 U.S. at 195). Relators point the Court to an email from General Counsel of the Indiana Family and Social Services Administration ("FSSA") stating that Indiana Medicaid would seek recoupment of the claims in this action "if the claims identified in [this] qui tam action are confirmed to be claims that are not legally entitled to payment," arguing that Indiana Medicaid has clearly signaled a change in position (Filing No. 227-1 at 2). Relators assert this shows that Indiana Medicaid did not have actual knowledge that the overpayments identified by the IBM reports were in fact improper and shows Indiana Medicaid cares about compliance, which creates a material dispute of fact as to materiality under *Escobar* (Filing No. 227 at 25–26).

Finally, Relators assert that they have provided several reasonable alternative explanations for Indiana Medicaid's inaction on the IBM reports. Relators again point to their allegations that Indiana Medicaid resource constraints and inexperience were the cause of the failure to pursue recoupments identified by the IBM reports. *Id.* at 28. Relators add that Indiana Medicaid's conduct,

while relevant, does not categorically defeat materiality, and the analysis should instead be viewed holistically. *Id.* at 29.

The MCE Defendants argue in their reply that there is no reason for the Court to depart from its previous finding that Indiana Medicaid had actual knowledge of the alleged violations (Filing No. 228 at 5). The MCE Defendants argue that this case is distinguishable from *Streck* because in that case, the Seventh Circuit held the defendant's false reporting of Average Manufacturer Pricing could have been material because, even though the defendant "formalistically told the government how it calculated [the pricing]," the defendant excluded from its pricing calculation amounts clawed back from wholesalers that amounted to $600 million, without explaining to the government the monetary implications of this exclusion (Filing No. 228 at 5 (quoting *Streck*, 152 F.4th at 848)). In contrast, the IBM reports identified not only the claims at issue, but also the reason why the claims were flagged and their purported financial impact. *Id.*

Defendants argue in their replies that Relators' new allegations are inconsistent within the Third Amended Complaint and therefore fail the heightened Rule 9(b) pleading standard. Specifically, the Hospital Defendants point to documents attached to the Third Amended Complaint showing that recoupment efforts remained undisturbed during the relevant time; Relators' own July 2020 report detailed that IBM's highest annual recoupments occurred during the period in which Relators allege Indiana Medicaid deprioritized recoupment efforts and allegedly did not review the IBM reports at issue, with 2017 being the second-highest year between 2011 and 2020, 2018 being the fourth highest, and 2019 being the fifth highest (Filing No. 229 at 9). The Hospital Defendants point to the same report to note that Indiana Medicaid did not pursue 22 of the IBM report findings during that period, which indicates that Indiana Medicaid did review IBM's reports and chose whether to seek recoupment based on IBM's findings.

The MCE Defendants contend that the FSSA General Counsel's statement that Indiana Medicaid will seek recoupment if the Court determines that the claims were not legally payable is not news—"presumably," Indiana Medicaid has always cared about recoupment. But the MCE Defendants argue that this does not make the specific violations alleged here material (Filing No. 228 at 9). They assert that the Third Amended Complaint contains internal inconsistencies that cannot all be true and thus, it fails to meet Rule 9(b) specificity. Specifically, the Third Amended Complaint alleges that Indiana Medicaid always found the alleged violations material but also had a change in policy, and also separately is too afraid of the expense of administrative actions to recoup the alleged false claims. *Id.* at 7–8.

Finally, the State of Indiana filed a Second Statement of Interest in this case to inform the Court as to the State's position on the interpretation of the materiality element of the Indiana False Claims Act (Filing No. 230). The State of Indiana contends that the Court should take a holistic approach when determining materiality and argues that the materiality inquiry must give full effect to the importance of the Indiana Medicaid program and accountability necessary to protect it (Filing No. 230 at 4). The State of Indiana concludes,

> Medicaid is not an ordinary commercial arrangement. It is a vital public program that Indiana's most vulnerable citizens rely upon as a dependable source of the essential medical care they need, and the integrity of that program depends upon providers submitting truthful, accurate, and complete information when seeking payment from public funds.
>
> When considering whether a provider's abuse of that trust speaks to the core of that program, focusing exclusively on the State's enforcement decisions made with imperfect information and limited resources undervalues the harm that false or misleading claims can inflict on ordinary citizens' access to vital healthcare. Instead, the court should conduct the particularized and holistic inquiry described by Escobar and its progeny, considering the nature of each allegedly violated requirement, its relationship to the bargain between Indiana Medicaid and its providers, and the harm to the program and the beneficiaries who depend upon it.

*Id.* at 5.

Taking Relators' allegations as true, which the Court is required to do at this stage, the Court finds that, though it is a close call, materiality is satisfied.

While the Court previously found that Indiana Medicaid paid the alleged false claims despite actual knowledge of the violations, the Court did so based on Relators' allegations contained in the Second Amended Complaint. Specifically, in the Second Amended Complaint, the Relators alleged that Indiana Medicaid knew of the alleged violations but paid the claims anyways due to improper political pressure. The Third Amended Complaint makes no such allegation. Instead, the Third Amended Complaint provides further detail on what Relators believe happened, explaining that Indiana Medicaid went through a transition period where a new director took over and the Program Integrity team was short staffed (Filing No. 209 at 18–19).

The MCE Defendants and Hospital Defendants urge the Court not to accept Relators' new allegations, arguing they are inconsistent with prior allegations and admissions. However, an amended pleading superseding an original has two effects: "First, facts or admissions from an earlier complaint that are not included in a later complaint cannot be considered on a motion to dismiss. Second, where the original complaint and an amended complaint contain contradictory or mutually exclusive claims, only the claims in the amended complaint are considered . . . ." *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782–83 (7th Cir. 2013) (internal citation omitted) (citing *Moriarty v. Larry G. Lewis Funeral Dirs., Ltd.*, 150 F.3d 773, 777 (7th Cir. 1998)). Accordingly, the Relators' prior allegations of actual knowledge do not prevent the Court from taking their new assertions disclaiming such knowledge as true. *See Nance v. EMAGES, Inc.*, No. 20 C 6316, 2022 WL 2116581, at *5 (N.D. Ill. June 13, 2022) (stating that the court will not consider the plaintiff's prior allegations that they were not an employee of the defendant on a motion to dismiss, and that such allegations contained in the plaintiff's brief do not constitute the sort of judicial admission

that would prevent the plaintiff from amending those facts in a subsequent complaint). Thus, the Court's previous determination that there is "very strong evidence" against materiality due to alleged actual knowledge is no longer the case.

Absent actual knowledge by Indiana Medicaid, the holistic view the Court is required to take leads to the conclusion that the alleged false claims were material. That is, had Indiana Medicaid actually known of the alleged false claims, it would not have paid them. Indeed, "[n]oncompliance with the law resulting in large price differentials in how much the government owes 'offers strong support for a finding of materiality.'" *Streck*, 152 F.4th at 867 (quoting *Molina*, 17 F.4th at 743). In addition, the MCE Defendants and Hospital Defendants are required to certify that the claims they submit are correct. *Id.* (citing *Escobar*, 579 U.S. at 194 (noting government's "decision to expressly identify a provision as a condition of payment is relevant")). "Since the law and regulations identified here were central to the [Medicaid] framework, the requirement to comply with them is probative evidence of materiality." *Id.* (citing *United States ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1352 (11th Cir. 2021) (reasoning that certifications with law are relevant for materiality when the conditions bear a relationship to the relevant payment)).

This case is similar to *United States ex rel. Heath v. Wisconsin Bell, Inc.*, 92 F.4th 654 (2024). In *Heath*, Wisconsin Bell was alleged to have violated the False Claims Act by submitting falsely inflated bills to the federal government for its information and telecommunications services. *Id.* at 657–60. Similar to the Medicaid program here, the federal government subsidizes these services to schools and libraries in lower income areas. *Id.* at 657. To achieve low costs of such services, the service providers were required to "follow what is known as the 'lowest-corresponding-price' rule and offer schools and libraries 'the lowest price charged to non-residential customers who are similarly situated.'" *Id.* at 658 (cleaned up) (quoting 47 C.F.R. §

54.500). Despite knowledge of the lowest-corresponding price rule, Wisconsin Bell failed to comply with it for over a decade while simultaneously submitting invoices to the federal government for partial reimbursement. *Id.* at 658–59.

The Seventh Circuit "rejected Wisconsin Bell's argument[]s that violations of the 'lowest corresponding price' rule were immaterial." *Streck*, 152 F.4th at 847 (quoting *Heath*, 92 F.4th at 664). "Because the 'entire purpose' of the program was 'to keep costs low,' it was 'reasonable to infer that if the government knew of actual overcharges, it would not approve [the] claims.'" *Id.* (alteration in original) (quoting *Heath*, 92 F.4th at 665). "In other words, because the misrepresentation went 'to the very essence of the bargain,' it was material." *Id.* (quoting *Escobar*, 579 U.S. at 193 n.5). That is the case here.

The entire purpose of the managed care model under Medicaid is to promote efficiency and reduce overall costs to the federal and state governments without sacrificing the delivery of health care services. *See Molina Healthcare of Ind., Inc. v. Henderson*, No. 06-cv-1483, 2006 WL 3518269, at *2 (S.D. Ind. Dec. 4, 2006) ("In an effort to promote the goals of cost effectiveness and efficiency . . . Congress authorized a 'waiver' program to allow states to deliver Medicaid health care through managed care programs . . . where providers help manage the patient care and eliminate medically unnecessary treatment, which results in lower utilization and thus cost savings."). Thus, the managed care framework of this case closely parallels *Streck* and *Heath*. If the MCE Defendants and Hospital Defendants submit claims for reimbursement they are not legally entitled to, the government's payments go up and thus, the government's Medicaid costs and ability to insure the poor are "tied directly" to accurate claims. *Streck*, 152 F.4th at 847 (quoting *Heath*, 92 F.4th at 665); (*see also* Filing No. 230 at 5 (stating that Medicaid "is a vital public program that Indiana's most vulnerable citizens rely upon as a dependable source of the essential

medical care they need, and the integrity of that program depends upon providers submitting" valid claims)). Accordingly, it is reasonable for the Court to infer that if Indiana Medicaid had known of the actual violations, it would have sought recoupment.

The MCE Defendants and Hospital Defendants are correct that Indiana Medicaid's inaction is evidence of immateriality, but that fact alone is not dispositive. *Streck*, 152 F.4th at 847 (citation omitted). The substantial amount of money allegedly misrepresented (hundreds of millions of dollars), the managed care model's purpose of overall cost saving, and the importance of valid claims to Indiana Medicaid's ability to insure the vulnerable and poor all support a finding of materiality. *See id.* at 847–48. And like in *Streck*, the mere fact that Indiana Medicaid had the reports does not automatically indicate that they knew or appreciated the reports' significance such that it defeats materiality. *Id.* at 848 (citing *United States v. Care Alternatives*, 81 F.4th 361, 375 (3d Cir. 2023) (affirming materiality verdict because extent of government's knowledge was unclear)). "Recall, a statement is material when it is capable of influencing a decision even if those who make the decision are negligent and fail to appreciate the statement's significance." *Id.* (citation modified) (quoting *Rogan*, 517 F.3d at 452).

While the MCE Defendants and Hospital Defendants point to the State of Indiana's assertions that the IBM reports may be doubtful or speculative (Filing No. 231), the issue is not whether the IBM reports themselves were material to the government's payment decision but rather whether the allegedly false claims to the government were material to its payment decision. That is, had Indiana Medicaid known the alleged claims were in fact false, would it have still paid the claims. The Court concludes that the allegations in the Third Amended Complaint are sufficient to show that Indiana Medicaid would not have, and the Court is therefore satisfied that the alleged misrepresentations were material.

Having determined that the Third Amended Complaint alleges facts sufficient to survive the initial hurdle of a motion to dismiss, the Defendants' Motions to Dismiss are **denied**.

## IV. CONCLUSION

For the reasons explained above, the MCE Defendants' Motion to Dismiss (Filing No. 218) is **DENIED**, and the Hospital Defendants' Motion to Dismiss (Filing No. 221) is **DENIED**. Relators' claims **shall proceed**.

**SO ORDERED.**

Date: 8/20/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Jennifer A L Battle, I
Carpenter Lipps LLP
battle@carpenterlipps.com

Jonathan A. Bont
FBT Gibbons LLP
jbont@fbtgibbons.com

Neal Anthony Brackett
BARNES & THORNBURG LLP
nbrackett@btlaw.com

Lawrence J. Carcare, II
OFFICE OF THE INDIANA ATTORNEY GENERAL
Lawrence.Carcare@atg.in.gov

Tanner Cook
Husch Blackwell LLP
tanner.cook@huschblackwell.com

Jonathan Z DeSantis
Walden Macht Haran & Williams LLP
jdesantis@wmhwlaw.com

Kristin Leigh Froehle
Barnes & Thornburg LLP
kristin.froehle@btlaw.com

Amanda Jane Gallagher
Barnes & Thornburg LLP
Amanda.Gallagher@btlaw.com

Lori Garber
Foley & Lardner LLP
lori.garber@foley.com

Kandi Kilkelly Hidde
FBT Gibbons LLP
khidde@fbtgibbons.com
David Benjamin Honig
HALL, RENDER, KILLIAN, HEATH & LYMAN, PC (Indianapolis)
dhonig@hallrender.com

Jeremy L. Johnson
Office of Indiana Attorney General
jeremy.johnson@atg.in.gov

Kristopher N Kazmierczak
FBT Gibbons LLP
kkazmierczak@fbtgibbons.com

John Kelly, Jr
Barnes & Thornburg LLP
jkelly@btlaw.com

J. Taylor Kirklin
Barnes & Thornburg LLP
taylor.kirklin@btlaw.com

Molly Beth Knobler
DiCello Levitt LLP
mknobler@dicellolevitt.com

Kate Ledden
Husch Blackwell LLP
kate.ledden@huschblackwell.com

Jeffrey Alan Lipps, Sr
Carpenter Lipps LLP
lipps@carpenterlipps.com

Kathleen L. Matsoukas
BARNES & THORNBURG, LLP (Indianapolis)
kmatsoukas@btlaw.com

Daniel Robert Miller
Walden Macht Haran & Williams LLP
dmiller@wmhwlaw.com

Josh J. Minkler
Barnes & Thornburg LLP
jminkler@btlaw.com

Theresa Mullineaux
Husch Blackwell LLP
theresa.mullineaux@huschblackwell.com

Lisa Noller
Foley & Lardner LLP
lnoller@foley.com

Lisa Anne Ottolini
Husch Blackwell, LLP
lisa.ottolini@huschblackwell.com

Jacquelyn E. Papish
Barnes & Thornburg LLP
jackie.papish@btlaw.com

Jonathan Alan Porter
Husch Blackwell LLP
jonathan.porter@huschblackwell.com

Steven H. Pratt
Hall, Render, Killian, Health & Lyman, P.C.
spratt@hallrender.com

Christopher S. Wolcott
The Wolcott Law Firm LLC
indy2buck@hotmail.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov

Li Yu
Bernstein Litowitz Berger & Grossmann LLP
Li.Yu@blbglaw.com